UNITED STATES of America, Appellee,

v.

Peter MONSANTO,
Defendant–Appellant.

No. 436, Docket 87–1397.

United States Court of Appeals,
Second Circuit.

Remanded June 22, 1989.

Decided Jan. 9, 1991.

Order on Denial of Rehearing and
Rehearing En Banc Feb. 28, 1991.

Order on Denial of Rehearing by the
Original Panel April 4, 1991.

Edward M. Chikofsky, New York City, for defendant-appellant.

Mark C. Hansen, Asst. U.S. Atty. for the S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., David E. Brodsky, Asst. U.S. Atty. for the S.D.N.Y., New York City, of counsel), for appellee.

Arthur L. Liman, New York City (Catherine J. Ross, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for amici curiae the Committees on Criminal Advocacy and on Criminal Law of the Ass'n of the Bar of the City of New York, the New York Council of Defense Lawyers, the New York Criminal Bar Ass'n, and the New York State Ass'n of Criminal Defense Lawyers.

Before OAKES, Chief Judge,
FEINBERG, MESKILL, NEWMAN,
KEARSE, CARDAMONE, WINTER,
PRATT, MINER, ALTIMARI,
MAHONEY, WALKER and
McLAUGHLIN, Circuit Judges.

MAHONEY, Circuit Judge, with whom FEINBERG, MESKILL, JON O. NEWMAN, KEARSE, GEORGE C. PRATT, and McLAUGHLIN, Circuit Judges, join:

This case comes to us on remand from the Supreme Court of the United States. We decide two issues under a provision added by the Comprehensive Forfeiture Act of 1984 (the "CFA"), 21 U.S.C. § 853 (1988):[1] (1) whether the fifth and sixth amendments, considered in combination, require an adversary post-restraint, pretrial hearing in order to continue a restraint ordered ex parte, pursuant to section 853(e)(1)(A), of assets needed to retain counsel of choice; and (2) if so, whether grand jury determinations of probable cause underlying an indictment may be reconsidered in such a hearing. For the reasons set forth below, we answer both questions in the affirmative.

The initial panel opinion in this case, 836 F.2d 74 (2d Cir.1987) (*"Monsanto I"*), is vacated. We reaffirm, however, the ruling in *Monsanto I* remanding for a pretrial hearing, but determine that future such hearings shall be governed by a "probable cause" standard.

## Background

The history of this case on appeal traces through three reported opinions: (1) the initial panel decision (with one judge dissenting) in *Monsanto I;* (2) the in banc

---

1. Section 853(e) provides:
     (e)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—
     (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or
     (B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—
        (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and
        (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

*Provided, however,* That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.
     (2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.
     (3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

decision of this court in *United States v. Monsanto ("Monsanto II")*, 852 F.2d 1400 (2d Cir.1988) (in banc) (per curiam); and (3) the decision of the Supreme Court of the United States in *United States v. Monsanto ("Monsanto III")*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). Although we assume the reader's familiarity with these decisions, we shall briefly recount the developments preceding our decision today.

In a multicount indictment unsealed on July 8, 1987, appellant Peter Monsanto was charged with RICO, narcotics, continuing criminal enterprise ("CCE"), and firearms violations. The indictment also alleged that a home, an apartment, and $35,000 in cash were subject to forfeiture under 21 U.S.C. § 853(a)(1) (1988) because they were "property constituting, or derived from, any proceeds [Monsanto] obtained, directly or indirectly, as the result" of narcotics offenses, *id.*

On the day the indictment was unsealed, the United States District Court for the Southern District of New York, John F. Keenan, *Judge*, granted the government's application for an ex parte restraining order, pursuant to section 853(e)(1)(A), prohibiting Monsanto from directly or indirectly transferring or encumbering the home or the apartment.

In August, 1987, Monsanto moved to vacate or modify the restraining order, seeking (1) permission to use the restrained assets to retain private trial counsel, and (2) a declaration that legal fees paid to such counsel would be exempt from post-trial forfeiture under the "relation back" provision of 21 U.S.C. § 853(c) (1988). Monsanto contended that the CFA did not apply to property needed to pay attorney's fees; in the alternative, he argued that the statute, if applicable to such property, would impermissibly interfere with his qualified sixth amendment right to counsel of choice.

The district court denied Monsanto's motion, and Monsanto thereupon brought an expedited interlocutory appeal to this court. In *Monsanto I*, a panel of this court, with (now) Chief Judge Oakes in dissent, rejected Monsanto's statutory and sixth amendment claims. The panel held, however,

that the fifth and sixth amendments, considered in combination, require notice and a pretrial, adversary hearing where the government wishes to continue an order restraining assets needed to pay a defendant's counsel of choice. 836 F.2d at 82–85. The panel ruled that the government would have the burden at such a hearing to "demonstrate the likelihood that the assets are forfeitable," thus providing a "procedural check against the government's discretion to limit CCE and RICO defendants' choice of counsel simply by obtaining a forfeiture charge in the indictment." 836 F.2d at 84. It held, further, that where the government fails that burden, "any funds thereafter used to pay legitimate attorney's fees [would] be exempt from any future post-trial forfeiture." *Id.*

The panel remanded the case to the district court, which then held a hearing pursuant to the panel's mandate. At the conclusion of the hearing, the district court, finding that the government had met its burden, ruled that the restraining order would continue in effect. Monsanto was thereafter brought to trial, and was ultimately convicted on all counts charged in the indictment. His direct appeal is pending.

Meanwhile, this court voted, in January 1988, to rehear Monsanto's interlocutory appeal in banc. Thereafter, by an eight-four vote, the in banc court held, albeit pursuant to differing rationales, that

> the order of the district court denying Monsanto's motion should be vacated and the case remanded with instructions to modify the restraining order to permit Monsanto access to restrained assets to the extent necessary to pay legitimate (that is, nonsham) attorney's fees in connection with the criminal charges against him.

*Monsanto II*, 852 F.2d at 1402. A majority of the in banc court also "agree[d] that any such fees paid to Monsanto's defense counsel are exempt from subsequent forfeiture pursuant to 21 U.S.C. § 853(c)." *Id.*

The Supreme Court thereafter granted certiorari, 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988), and, in *Monsanto III*,

reversed the judgment of the in banc court. After first concluding that the forfeiture and pretrial restraining order provisions of section § 853 provide no exemption for assets needed to retain counsel of choice, *see* 109 S.Ct. at 2661–65, the Court addressed the question whether the restraining order violated either "[Monsanto's] right to counsel of choice as protected by the Sixth Amendment or the Due Process Clause of the Fifth Amendment." 109 S.Ct. at 2665. Relying on another decision announced the same day, *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 2651–2657, 105 L.Ed.2d 528 (1989), the Court concluded that "neither of the Fifth or Sixth Amendments to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." *Monsanto III,* 109 S.Ct. at 2666.

In *Caplin & Drysdale,* the Court said: "[T]here is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable." 109 S.Ct. at 2655. The Court also refused to invalidate the forfeiture statute on the asserted ground that it upsets "the 'balance of forces between the accused and his accuser'" required by the fifth amendment, *id.,* 109 S.Ct. at 2656 (quoting *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973)), noting that "while '[t]he Constitution guarantees a fair trial through the Due Process Clauses ... it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment....'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984)). Finally, addressing the contention that the forfeiture power provided by section 853 could result in prosecutorial abuse, the Court said:

> The Constitution does not forbid the imposition of an otherwise permissible criminal sanction, such as forfeiture, merely because in some cases prosecutors may abuse the processes available to them, *e.g.,* by attempting to impose them on persons who should not be subjected to that punishment. Cases involving particular abuses can be dealt with individually by the lower courts, when (and if) any such cases arise.

109 S.Ct. at 2657 (citation omitted).

Because the attorneys' challenge to forfeiture in *Caplin & Drysdale* occurred following their client's guilty plea, however, the specific issue of *pretrial* restraint of assets in anticipation of post-trial forfeiture was not addressed in that case. The *Monsanto III* opinion, therefore, after relying upon *Caplin & Drysdale* for the general proposition that assets needed to pay counsel of choice may nonetheless be constitutionally subjected to forfeiture, proceeded to address Monsanto's contention that "freezing the assets in question before he is convicted—and before they are finally adjudged to be forfeitable—raises distinct constitutional concerns." *Monsanto III,* 109 S.Ct. at 2666. The Court concluded that "assets in a defendant's possession may be restrained in the way they were here based on a finding of probable cause to believe that the assets are forfeitable." *Id.*

The Court declined, however, to address the procedural aspects of such a pretrial restraint of property, stating:

> We do not consider today ... whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed. As noted above, in its initial consideration of this case, a panel of the Second Circuit ordered that such a hearing be held before permitting the entry of a restraining order; on remand, the District Court held an extensive, 4-day hearing on the question of probable cause.
>
> Though the Solicitor General petitioned for review of the Second Circuit's holding that such a hearing was required, ... given that the Government prevailed in the District Court notwithstanding the hearing, it would be pointless for us now to consider whether a hearing was required by the Due Process Clause. Furthermore, because the Court of Appeals, in its en banc decision, did not address the procedural Due Process issue, we

also do not inquire whether the hearing—if a hearing was required at all—' was an adequate one.

109 S.Ct. at 2666 n. 10. The case was then remanded for further proceedings. *Id.* at 2667.

Monsanto's counsel thereupon wrote this court requesting that we set a briefing and argument schedule to address the issues left open in footnote 10 of *Monsanto III.* The United States Attorney for the Southern District of New York took an opposing. position, suggesting that these issues be left to the panel of this court that hears Monsanto's direct appeal. The in banc court subsequently ordered that the case be "remanded for the purpose of considering the issue whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed, *United States v. Monsanto* [491 U.S. 600], 109 S.Ct. 2657, 2666 n. 10 [105 L.Ed.2d 512] (U.S.1989), to the panel [that heard] the original appeal."

That panel then requested the parties to submit simultaneous letter briefs addressing two questions:

(1) Does due process require an adversary post-attachment, pretrial hearing in order to continue an attachment of assets needed to retain counsel of choice?

(2) If so, may this requirement be judicially imposed, or must it be legislated?

Responding briefs were filed by the parties, and a third brief was submitted by the Committees on Criminal Advocacy and Criminal Law of the Association of the Bar of the City of New York, the New York Council of Defense Lawyers, the New York Criminal Bar Association, and the New York State Association of Criminal Defense Lawyers, as *amici curiae.* The court sub-

sequently determined to decide the case in banc.

We now turn to the consideration of the questions briefed by the parties, with modifications hereinafter specified.

*Discussion*

### A. The Requirement of a Hearing.

The *Monsanto I* panel held that after an ex parte, post-indictment, pretrial restraining order is entered pursuant to 21 U.S.C. § 853(e)(1)(A) (1988), "a pre-trial adversary hearing is required where the question of attorney's fees is implicated." 836 F.2d at 82 n. 7. For the reasons stated below, we adopt that ruling. We note that both parties, as well as *amici curiae,* are in agreement on this point, as are at least six of our sister circuit courts of appeals. *See United States v. Moya–Gomez,* 860 F.2d 706, 731 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Harvey,* 814 F.2d 905, 928 (4th Cir.1987), *superceded as to other issues, In re Forfeiture Hearing as to Caplin & Drysdale,* 837 F.2d 637 (4th Cir.1988) (in banc), *aff'd,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Thier,* 801 F.2d 1463, 1466–70 (5th Cir.1986) (hearing required as a matter of statutory interpretation), *modified,* 809 F.2d 249 (5th Cir.1987); *United States v. Crozier,* 777 F.2d 1376, 1383–84 (9th Cir. 1985); *United States v. Lewis,* 759 F.2d 1316, 1324–25 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Spilotro,* 680 F.2d 612, 616–19 (9th Cir.1982); *United States v. Long,* 654 F.2d 911, 915–16 (3d Cir.1981); *see also United States v. Noriega,* 746 F.Supp. 1541, 1545 & n. 2 (1990). *But see United States v. Bissell,* 866 F.2d 1343, 1354 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989).[2]

---

**2.** In *United States v. Musson,* 802 F.2d 384, 386–87 (10th Cir.1986), the Tenth Circuit held that due process did not require an evidentiary hearing where defendants attacked the post-indictment, pretrial restraint of their assets without a hearing, but did not contend that they needed the restrained assets to pay counsel of choice. When that court subsequently faced a sixth amendment challenge to forfeiture of assets necessary to secure counsel of choice, it expressly left open the question whether, in this con-

text, the statutory forfeiture procedures present a due process problem. *See United States v. Nichols,* 841 F.2d 1485, 1491 n. 4 (10th Cir.1988).

Similarly, although the District of Columbia Circuit has held that a defendant has no due process right to use duly forfeited assets to obtain counsel of choice for his appeal, the court "express[ed] no view on those cases where a criminal defendant seeks the release of assets restrained prior to trial." *United States v. Fried-*

Both *Monsanto I* and the cited cases address the issue whether a post-indictment restraining order issued in accordance with section 853(e)(1)(A) may be *continued* to (and at least ordinarily through) trial without a hearing.[3] The question left open by the Supreme Court in *Monsanto III* was not, however, whether such an order may be *continued* without a pretrial hearing, but rather, "whether the Due Process clause requires a hearing before a pretrial restraining order can be *imposed.*" 109 S.Ct. at 2666 n. 10 (emphasis added). We shall therefore consider whether the fifth and sixth amendments, taken in combination, require an adversary hearing (1) prior to the initial imposition of a post-indictment restraining order, and if so, (2) the question to which the decided cases have been directed, for its pretrial continuation.

### 1. *Initial Imposition of a Post-Indictment Restraining Order.*

■ The entry of an ex parte restraining order under section 853(e)(1)(A) "operates to remove the assets from the control of the defendant on the claim of the government that it has a higher right to those assets." *Moya–Gomez*, 860 F.2d at 725. Since the defendant's full ownership interests are restored if no judgment of conviction is entered against him, the removal of assets from his control is, by nature, temporary and nonfinal. Such a removal is, nonetheless, a "deprivation of property" subject to the constraints of due process. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 84–86, 92 S.Ct. 1983, 1996–97, 32 L.Ed.2d 556 (1972).

■ The due process clause of the fifth amendment generally requires "notice and an opportunity to be heard prior to the deprivation of a property interest." *United States v. Property at 4492 S. Livonia Rd., Livonia*, 889 F.2d 1258, 1263 (2d Cir. 1989) (citing *Fuentes v. Shevin*, 407 U.S. at

81–82, 92 S.Ct. at 1994–95; *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969)). Only in "'extraordinary situations'" may notice and a hearing be postponed until after the deprivation. *Fuentes*, 407 U.S. at 90, 92 S.Ct. at 1999 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)); *Sniadach*, 395 U.S. at 339, 89 S.Ct. at 1821. Such a situation exists where three criteria are satisfied:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Fuentes*, 407 U.S. at 91, 92 S.Ct. at 2000; *see also Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974).

■ We believe that the circumstances addressed by section 853(e)(1)(A) present an extraordinary situation, thus justifying the absence of a *pre-*restraining order hearing. The full recovery of assets under the forfeiture provisions of section 853(e) serves several governmental and public ends, including: (1) "separating a criminal from his ill-gotten gains," *Caplin & Drysdale*, 109 S.Ct. at 2654; (2) obtaining substantial funds for furtherance of law enforcement, *see id.;* (3) permitting recovery of assets by their "rightful owners," *id.;* and (4) lessening the "economic power of organized crime and drug enterprises," *id.* In order to effectuate these purposes, the government needs some means of promptly heading off any attempted disposal of assets that might be made in anticipation of a criminal forfeiture.

---

*man*, 849 F.2d 1488, 1491 (D.C.Cir.1988) (per curiam).

**3.** Section 853(e)(1)(B) authorizes the issuance of a *pre-indictment* restraining order only after "notice to persons appearing to have an interest in the property and opportunity for a hearing."

Recently, in the context of a civil forfeiture proceeding involving a home, we noted that the possibility that the home would be transferred was a sufficiently exigent circumstance to warrant the use of a procedure (the filing of a lis pendens) that would effectively avert such a transfer prior to the preseizure notice and hearing we deemed necessary. *Livonia*, 889 F.2d at 1265. Here, the restraining order serves the same purpose as to the assets in question as did the lis pendens in *Livonia*. In each instance, a prohibition of any efforts to preserve the availability of potentially forfeitable property until a hearing had been held might "frustrate the interests served" by the statute. *Calero–Toledo*, 416 U.S. at 679, 94 S.Ct. at 2089. *Calero–Toledo* specifically upheld a statute that authorized seizure for forfeiture of property used for unlawful purposes without any preseizure notice or hearing. *Id.* at 676–80, 94 S.Ct. at 2088–90. In doing so, it cited, *id.* at 679 n. 14, 94 S.Ct. at 2090 n. 14, the observation in *Fuentes v. Shevin* that "our decision today in no way implies that there must be opportunity for an adversary hearing before a search warrant is issued." *Fuentes v. Shevin*, 407 U.S. at 93 n. 30, 92 S.Ct. at 2001 n. 30.

We therefore conclude that, because of the exigent circumstances presented, notice and a hearing need not occur before an ex parte restraining order is entered pursuant to section 853(e)(1)(A). On this point, the in banc court is unanimous. We next consider whether a hearing is required *after* the entry of such an order, but before trial.

2. *Continuation of a Post–Indictment Restraining Order throughout the Pretrial Period.*

■ Traditional due process evaluation of such questions entails balancing three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970)). We consider these in turn.

a. *The Private Interest to be Affected by the Official Action.*

■ The first factor weighs particularly heavily in this case. The private interest at stake is not merely a defendant's wish to use his property in whatever manner he sees fit. Here, that interest is augmented by an important liberty interest: the qualified right, under the sixth amendment, to counsel of choice. The restraining order severely affects that right by putting beyond the defendant's reach assets which are demonstrably necessary to obtain the legal counsel he desires. The temporary, nonfinal deprivation is, in that respect, effectively a permanent one. *See Moya–Gomez*, 860 F.2d at 726 ("The defendant needs the attorney *now* if the attorney is to do him any good.").

In the decision remanding the instant case to this court, the Supreme Court held that "neither of the Fifth or Sixth Amendments to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." *Monsanto III*, 109 S.Ct. at 2666 (citing and following *Caplin & Drysdale*, 109 S.Ct. at 2651). In addressing, however, the situation posed by a *pretrial* restraint of assets needed to retain counsel when those assets concededly have not been "adjudged to be forfeitable," the Court ruled only that "no constitutional violation occurs when, *after probable cause is adequately established,* the Government obtains an order ... [restraining] assets prior to trial." *Monsanto III*, 109 S.Ct. at 2667 (emphasis added). Since, one page earlier, the Court expressly reserved the issue "whether the Due Process clause requires a hearing before a pretrial restraining order can be imposed," *id.* at 2666 n. 10, *Monsanto III* should not be

read to deprecate a criminal defendant's strong and legitimate interest in ensuring that "probable cause is adequately established" at a pretrial hearing before he is effectively deprived of counsel of choice as a result of a pretrial restraint of his assets. *See Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.").

Judge Cardamone's dissenting opinion takes the position, on the contrary, that a criminal defendant's interest in a pretrial hearing is slight. Reasoning that "any forfeitable assets used to retain an attorney could ultimately be seized by the government upon a verdict in its favor via the statute's 'relation back' provision" (citing 21 U.S.C. § 853(c) and *Monsanto III*, 109 S.Ct. at 2660-61 n. 3, 2667), he concludes that "issuance of a pretrial protective order should have *no* effect on a defendant's ability to retain counsel of choice, for even in the absence of pretrial restraint an attorney is on notice that he will not be able to keep fees collected from assets that are ultimately found forfeited after trial."

As discussed hereinafter, however, the Supreme Court's rulings in *Monsanto III* and *Caplin & Drysdale* compel a defendant to establish lack of probable cause either as to guilt or forfeitability of restrained assets in order to obtain any relief from a pretrial restraint of allegedly forfeitable assets. It is hardly evident that counsel would be unavailable where such a showing could successfully be made. Rather, as the Supreme Court observed in addressing this precise issue, it is not "necessarily the case that a defendant who possesses nothing but assets the Government seeks to have forfeited will be prevented from retaining counsel of choice." *Caplin & Drysdale*, 109 S.Ct. at 2652.

It is implicit in Judge Cardamone's contrary view that the decisions in *Caplin & Drysdale* and *Monsanto III*, taken together with the "relation back" provision of section 853(c), have effectively obliterated the right to counsel of choice, and thus the worth of any pretrial hearing designed to protect that right. If this were so, however, the Court would hardly have expressly reserved this very question in footnote 10 of *Monsanto III*.

Judge Cardamone also contrasts pretrial restraint of property with pretrial restraint of person, noting that although "a defendant seeking to be free on bail pending trial is afforded a full adversarial hearing at which the sufficiency of the evidence against him may be considered, 18 U.S.C. § 3142(f), 3142(g)(2) (1988)," such a defendant "is not permitted to challenge the grand jury's finding of probable cause supporting the indictment, but is limited to demonstrating that he is not likely to flee pending trial and is not a threat to the safety of the community." He concludes that defendants seeking to attack pretrial restraints of property should be similarly constrained from assailing grand jury determinations of probable cause.

It would seem, however, that a pretrial hearing at which the presiding judge is explicitly mandated to consider, *inter alia*, "the weight of the evidence against the person" in reaching a bail determination, *see* 18 U.S.C. § 3142(g)(2) (1988), amounts to a reconsideration of the evidence previously weighed by the grand jury, and thus of its probable cause determination. Furthermore, allowing defendants to challenge probable cause determinations underlying pretrial restraints of property would not provide them with procedural safeguards comparable to those afforded defendants seeking bail, who are entitled to a "full-blown adversary hearing" at which "the Government must convince a neutral decisionmaker by clear and convincing evidence" that the statutory grounds to deny bail have been established. *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (citing 18 U.S.C. § 3142(f) (1988)). Further, Congress has specified the conditions relevant to that decision, 18 U.S.C. § 3142(g) (1988), and should a judicial officer order detention, the detainee is entitled to expedited appellate review of the detention order, *id.* § 3145(b), (c). See *Salerno*, 481 U.S. at 742–43, 107 S.Ct. at 2098–99.

We note also that the arrestee has the right to be represented by retained or appointed counsel, section 3142(f), and "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise," *id.* Any detention order resulting from the hearing must "include written findings of fact and a written statement of the reasons for the detention," section 3142(i)(1). Clearly, as the letter brief of *amici* puts it, "the procedures mandated by [*Monsanto I*] pale in comparison with the safeguards enacted by Congress in the comparable situation of pre-trial detention."

In sum, the considerations advanced by Judge Cardamone hardly gainsay the strong interest of an indicted defendant in retaining counsel of choice, and therefore in a pretrial hearing to reexamine the probable cause determinations that preclude access to assets needed for such retention.

b. *The Risk of an Erroneous Deprivation of a Defendant's Interest in Retaining Counsel of Choice, and the Probable Value of Procedural Alternatives.*

The panel addressed the risk of erroneous deprivation in *Monsanto I,* stating: "In the case before us, where the property is real estate rather than obvious contraband, the only source of certainty that the property is probably the proceeds of criminal activity is the indictment itself." *Id.,* 836 F.2d at 82. An indictment, of course, emerges from a nonadversarial process. Section 853(e)(1)(A) nonetheless provides for a restraining order "allowing the government to impose indigence and deprive RICO and CCE defendants of the opportunity to retain private counsel merely by obtaining an indictment." *Monsanto I,* 836 F.2d at 82. The inherent risk in allowing the deprivation of a property interest through ex parte proceedings accounts for the general rule that a prior adversary hearing is required, absent spe-

cial circumstances. *See Livonia,* 889 F.2d at 1263. It follows that there is a substantial risk of an erroneous deprivation of a defendant's significant property interest in the absence of an opportunity to be heard after the ex parte entry of a restraining order under section 853(e)(1)(A). We must therefore explore the value of an additional or substitute procedural safeguard.

We see considerable worth in a post-indictment, pre-trial adversarial hearing on the restraint issue. As the Supreme Court said in *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965): "A fundamental requirement of due process is 'the opportunity to be heard,' *Grannis v. Ordean,* 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)]. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Since a defendant who is denied any pretrial opportunity to contest a restraint of assets needed to retain counsel is irrevocably deprived of that counsel, *see Moya–Gomez,* 860 F.2d at 726, a pretrial adversary hearing can play a crucial role in ensuring that such a deprivation has an appropriate factual foundation.

■ *Monsanto I,* however, held that the government should be required at such a hearing "to demonstrate, by evidence independent of the indictment, a probability of convincing a jury beyond a reasonable doubt both that the defendant has violated the statute and that the assets are subject to forfeiture." *Monsanto I,* 836 F.2d at 83; *see also Lewis,* 759 F.2d at 1324; *Spilotro,* 680 F.2d at 618; *Long,* 654 F.2d at 915. Although the Supreme Court has left open in *Monsanto III,* 109 S.Ct. at 2666 n. 10, the procedural question whether a hearing can be required to continue an ex parte, post-indictment, pretrial restraining order, it seems clearly to have established that whatever the procedure, the government need only establish probable cause as to the defendant's guilt and the forfeitability of the specified assets, *see Monsanto III,* 109 S.Ct. at 2666–67, and we accordingly so rule.[4]

---

**4.** Section 853(e)(1)(B)(i), on the other hand, provides for a pre-indictment restraining order

after notice and an opportunity for a hearing, but requires a determination that "there is a

At such a hearing, as the panel said in *Monsanto I:*

> The procedures generally followed at Fed.R.Civ.P. 65 hearings should apply. In view of 21 U.S.C. § 853(e)(3) (Supp. III 1985), however, the district court will not be bound by the Federal Rules of Evidence at the hearing. *See United States v. Rogers,* 602 F.Supp. 1332, 1345 (D.Colo.1985).

836 F.2d at 85. Further, the only issue to be considered would be the question of probable cause. If the government succeeds in establishing probable cause, the policies favoring forfeiture, *see Caplin & Drysdale,* 109 S.Ct. at 2654, preclude any constitutional requirement that equities be further weighed or balanced on the issue of making funds available to retain counsel.

The government, while agreeing that due process requires a pretrial hearing, disagrees with our view of what that hearing should entail. Pointing to *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 865 n. 19, 43 L.Ed.2d 54 (1975); *Baker v. McCollan,* 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); and *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the government contends that an indictment must be regarded as conclusively establishing "probable cause to believe that the defendant committed a federal narcotics offense," but not necessarily establishing "probable cause to believe that the restrained assets represent the proceeds of that offense." It is therefore only the latter question, the government contends, that is open to consideration at an adversary, pretrial hearing challenging the restraint of allegedly forfeitable assets needed to retain counsel. The government bolsters this view with the assertion that "under the law of this Circuit, the evidence supporting an allegation that the defendant's property is forfeitable

need not be presented to the grand jury because it is not an element of the offense, but rather an additional penalty for a violation. *United States v. Grammatikos,* 633 F.2d 1013, 1025 (2d Cir.1980)."

We disagree. *Gerstein v. Pugh* and *Baker v. McCollan* establish that an indictment issued by a grand jury conclusively establishes probable cause authorizing issuance of an arrest warrant and immediately succeeding pretrial detention. *Calandra* adds that the ascertainment of probable cause is a "historic function[ ]" of the grand jury, 414 U.S. at 343, 94 S.Ct. at 617, and *Costello* that a facially valid indictment requires a defendant to stand trial in answer to its charges, 350 U.S. at 363, 76 S.Ct. at 408. In view of the Supreme Court's well established jurisprudence concerning due process protections against deprivations of property, and the additional sixth amendment considerations attendant upon the deprivation of assets needed to retain counsel of choice, with which none of the cited cases are in any way concerned, we do not read these cases as precluding a reconsideration of probable cause as to the defendant's commission of a federal narcotics, or RICO, offense in a pretrial hearing of the nature herein considered.[5]

Furthermore, we do not regard *Grammatikos* as supportive of the government's position. That case held that where an indictment alleged that the government would seek forfeiture of all profits and property susceptible to that penalty, and a bill of particulars identified the forfeitable properties, this procedure satisfied the requirement of Fed.R.Crim.P. 7(c)(2) that the indictment "allege the extent of the interest or property subject to forfeiture." *See* 633 F.2d at 1024–25; *see also United States v. Ianniello,* 621 F.Supp. 1455, 1479 (S.D.N.Y.1985) (*Grammatikos* holds "that a bill of particulars may supplement the indictment for purposes of Fed.R.Crim.P.

---

*substantial probability* that the United States will prevail on the issue of forfeiture and that failure to enter the order will [imperil the availability of the forfeitable property] for forfeiture" (emphasis added).

5. As we have noted hereinabove, 18 U.S.C. § 3142(g)(2) (1988) requires district courts to reconsider the "weight of the evidence" supporting an indictment in hearings to determine whether to detain a defendant or set conditions of bail.

7(c)(2)"), *aff'd*, 808 F.2d 184 (2d Cir.1986). As the government notes, we also said in *Grammatikos* that "the forfeiture provision of 21 U.S.C. § 848 is not an essential element of the offense, but merely an additional penalty for its violation. Consequently, it is not a matter which must be brought before the grand jury." 633 F.2d at 1025.

For present purposes, however, the operative fact is that section 853(e)(1)(A) allows the entry of a post-indictment, pretrial restraining order *only* "upon the filing of an indictment or information charging a [narcotics] violation ... for which criminal forfeiture may be sought under this section and alleging that *the property with respect to which the order is sought* would, in the event of conviction, be subject to forfeiture under this section" (emphasis added). *See also Caplin & Drysdale*, 109 S.Ct. at 2654 n. 5 ("forfeiture is a substantive charge in the indictment against a defendant"); *id.* at 2656 n. 10 ("any assets which the Government wishes to have forfeited must be specified in the indictment, see Fed.Rule Crim.Proc. 7(c)(2)"). We note in this regard the government's concession that in accordance with its "usual practice, ... the forfeiture allegations in this case were presented to the grand jury for a probable cause determination, notwithstanding *Grammatikos*."

Since any property subject to section 853(e)(1)(A) pretrial restraint must be specified in the indictment returned by the grand jury, we see no basis for distinction between the grand jury's probable cause determinations as to (1) the commission of a narcotics offense, and (2) the forfeitability of property identified in the indictment as the proceeds of that offense. We note, furthermore, that "[u]nlike *in rem* forfeiture, *in personam* forfeiture focuses on the defendant's guilt rather than on the illicit nature of the property." Note, RICO Post–Indictment Retraining Orders: The Process Due Defendants, 60 N.Y.U.L.Rev. 1162, 1180 (1985). It would be anomalous to authorize the hearings that the government concedes to be required by due process, but circumscribe the inquiry therein so as to preclude any consideration of the offense that is central to the availability of forfeiture.

Returning to the language of the test in *Mathews v. Eldridge*, we conclude that a pretrial adversary hearing addressing the existence of probable cause as to both the commission of a narcotics offense and the forfeitability of the specified property affords a procedural safeguard of substantial value. As stated hereinabove, due process ordinarily requires such a hearing *prior* to the deprivation of a property interest. *Livonia*, 889 F.2d at 1263. Even where, as here, that requirement is excused because of exceptional circumstances, *see id.*, an "opportunity for an early hearing" must be afforded. *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975); *cf. Calero–Toledo*, 416 U.S. at 679–80, 94 S.Ct. at 2090 (exigent circumstances authorize "postponement of notice and hearing" until after seizure).

c. *The Government's Interest, Including the Burden to be Imposed by a Pretrial Probable Cause Hearing.*

The Senate report accompanying the CFA criticized court decisions "allow[ing] the courts to entertain challenges to the validity of the indictment," stating:

Meeting such requirements can make obtaining a restraining order—the sole means available to the government to assure the availability of assets after conviction—quite difficult. In addition, these requirements may make pursuing a restraining order inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy and for jeopardizing the safety of witnesses and victims in racketeering and narcotics trafficking cases who would be required to testify at the restraining order hearing.

S.Rep. No. 225, 98th Cong., 2d Sess. 196, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3379 ("Senate Report"). These concerns are further reflected in 21 U.S.C. § 853(e)(3) (1988), which provides that a "court may receive and consider, at

a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence."

■ As indicated hereinabove, however, the Federal Rules of Evidence would not be followed in the pretrial hearings that this opinion would require, thus allowing the use of hearsay testimony and precluding unwarranted exposure of government witnesses. Indeed, this was the procedure followed on remand to the district court following *Monsanto I.* Furthermore, there would be *no difficulty posed to the government* in *obtaining* a pretrial restraining order, the other concern expressed in the Senate Report, since this could still be done ex parte. Rather, the *continuation* of the restraining order to and through trial would require a pretrial hearing, in obedience to the Supreme Court's mandate that a hearing be provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. at 552, 85 S.Ct. at 1191.

Since the major concerns expressed in the legislative history of section 853 are thus addressed and neutralized, we conclude that the due process balance manifestly tilts in favor of the pretrial hearing that we have outlined, a requirement imposed by the clear majority of the other circuits that have considered this issue. On this point, twelve members of the in banc court are in agreement. We note that the hearing which we require to justify *continuation* of a restraint is not being forced upon the government. If the government determines in any case that an adversary hearing in advance of a criminal trial is inadvisable, it always has the option of forgoing the restraint and obtaining forfeiture after conviction. Forfeitable property in the hands of transferees who cannot establish an innocent owner defense would also be recoverable.

B. *Judicial Authority to Require Inquiry into Probable Cause at Post–Indictment Hearing.*

We recall at this juncture the court's request that the litigants submit letter briefs concerning two questions:

(1) Does due process require an adversary post-attachment, pretrial hearing in order to continue an attachment of assets needed to retain counsel of choice?

(2) If so, may this requirement be judicially imposed, or must it be legislated?

■ Our resolution of the first question, however, invoked both the fifth amendment right to due process and the sixth amendment right to counsel. Similarly, our further consideration of the second question has resulted in a somewhat altered focus. The precise question presented is not whether the requirement of a post-attachment, pretrial hearing of the nature described can be judicially imposed. As will appear, section 853(e)(1)(A), read in the light of the pertinent legislative history, clearly authorizes such hearings. Rather, the question to be considered is whether we can require the reconsideration at such hearings of probable cause determinations previously made by a grand jury.

Section 853(e)(1)(A) states that a court "*may* enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of forfeitable property ... upon the filing of an indictment or information charging [specified narcotics violations]" (emphasis added). "In order to obtain the information necessary to determine whether or not to enter such a restraining order or injunction, the district court necessarily would have the authority to conduct ... a hearing." *Monsanto II*, 852 F.2d at 1420 (Pratt, J., concurring in part and dissenting in part). As this Court has recognized, such hearings occur, as a matter of routine practice, after restraining orders are entered under section 853(e): "[t]he initial *ex parte* order will ordinarily be very broad and subsequent fine-tuning may be necessary to avoid unnecessary or collateral effects." *United States v. Gelb*, 826 F.2d 1175, 1177 (2d Cir.1987) (per curiam). More importantly, the pertinent legislative history explicitly acknowledges this to be the case:

This provision does not exclude ... the authority to hold a hearing subsequent to

the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (*e.g.*, where information presented at the hearing shows that the property restrained was not among the property named in the indictment).

Senate Report at 203.[6]

The clear intent of Congress in this regard is not negated by the fact that the statute expressly requires a hearing in the provision for a *pre*-indictment restraining order, but does not do so in the provision for a *post*-indictment restraining order with which we are presently concerned. *Compare* section 853(e)(1)(B) *with* section 853(e)(1)(A). The authorization of pre-indictment restraining orders was apparently considered sufficiently novel to call for a specific description of the hearing process, a description not deemed necessary for the more familiar situation of obtaining a restraining order in a proceeding that was already pending. Any possible doubt on the latter score is resolved by the legislative history quoted in the preceding paragraph.

The Senate Report did, however, disapprove prior court decisions which "allow the courts to entertain challenges to the validity of the indictment, and require the government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance of trial" in order to obtain a restraining order. Senate Report at 196. This view was reiterated in the subsequent section analysis:

> [I]t is stressed that at [a post-restraint] hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

Senate Report at 203.

While our ruling that a district court would not be bound by the Federal Rules of Evidence at a post-indictment, pretrial hearing deals with the problem of premature disclosure of government witnesses, we concededly would require reconsideration of probable cause determinations made by a grand jury in the course of returning an indictment, contrary to the view expressed in the Senate Report.

The Senate Report, however, is not the sole legislative history that bears upon this question. A House of Representatives report accompanying an earlier version of the 1984 CCE forfeiture amendments stated:

> Nothing in [the forfeiture] section is intended to interfere with a person's Sixth Amendment right to counsel. The Committee, therefore, does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case. Compare *United States v. Meinster, supra* (court approved post-indictment transfer of assets to defendant's retained counsel); *United States v. Mandel*, 408 F.Supp. 679, 682–84 (D.Md.1976) (court denies order restraining transfer of assets), [w]ith *United States v. Bello*, 470 F.Supp. 723 (S.D.Cal. 1979) (court approves restraining order because appointed counsel is available).

H.R.Rep. No. 845, 98th Cong., 2d Sess., pt. 1, at 19 n. 1 (1984) ("House Report").

Furthermore, the Senate Report gave no consideration to the constitutional issue that we are required to decide in connection with its assertion that grand jury determinations of probable cause are not to be reconsidered. Finally, the statutory language is silent on the issue. Section 853(e)(1)(A) authorizes a restraining order "upon the filing of an [appropriate] indictment," but says nothing about the court's

---

**6.** The "provision" to which this quotation refers is 18 U.S.C. § 1963(e) (1988), the RICO forfeiture provision. The CFA amended section 1963(e) at the same time that it added section 853(e) to Title 21. *See* Senate Report at 197–98. The provisions of section 853 "closely parallel" those of section 1963, *id.* at 198, and the section analysis in the Senate Report concerning section 853(e) incorporates by reference the section analysis of section 1963(e), *see id.* at 213, from which the quotation in the text is taken.

authority to reconsider the probable cause determinations by a grand jury upon which the indictment is premised.

In light of the statutory silence and the ambiguous legislative history, we do no violence to congressional intent by ruling that grand jury determinations of probable cause may be reconsidered by district courts in ruling upon the continuation of post-indictment restraining orders. Not only is that intent equivocal; we are dealing with constitutional limits upon the exercise of judicial power in federal criminal trials, surely an area that federal courts address with considerable authority in the absence of a clear expression of congressional will.

■■■■ The applicable rule in these circumstances was stated in *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932):

> When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.

*Id.* at 62, 52 S.Ct. at 296; *see also Aptheker v. Secretary of State*, 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Specifically, we deem it appropriate to construe section 853(e)(1)(A) to allow consideration of probable cause issues in post-indictment hearings, in order to avoid potential constitutional infirmity of that statutory provision under the fifth and/or sixth amendments.

*Aptheker* also made clear, however, that " '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute ...' or judicially rewriting it." *Aptheker*, 378 U.S. at 515, 84 S.Ct. at 1668 (quoting *Scales v. United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961)). Appellant and *amici* contend that this rule is applicable

here, and Chief Judge Oakes concurs in that view in his separate opinion.

Chief Judge Oakes asserts in his separate opinion that the CCE forfeiture statute and its legislative history are "decidedly hostile" to the probable cause hearing which this opinion would authorize, adds that his "reading of section 853(e)(1)(A) and its legislative history leaves [him] unpersuaded that Congress would have enacted section 853(e)(1)(A) had it known that such proceedings were constitutionally mandated," and concludes that we should therefore invalidate section 853(e)(1)(A) *in toto*, in deference to the postulated congressional will.

It is agreed ground that Congress envisioned hearings following the imposition of post-indictment restraining orders, and that the statute is silent on the issue whether probable cause determinations as to guilt could be reconsidered with respect to the pretrial continuation of such restraining orders. It is further clear that the pertinent legislative history is ambiguous. To reiterate, it consists of expressions in a Senate report hostile to any consideration of probable cause at such hearings, without any consideration of the constitutional issue, *see Senate Report* at 196, 203; and a statement in a House report that the forfeiture provisions are not intended to interfere with a criminal defendants' sixth amendment right to counsel, an issue left to the courts, *see* House Report at 19 n. 1.

Since the federal courts, to which the House Report would consign the constitutional issue, have almost uniformly required a post-indictment, pretrial hearing, and the Supreme Court, while leaving the procedural issue open in *Monsanto III* footnote 10, has specified that the standard at any such hearing must be probable cause, *see Monsanto III*, 109 S.Ct. at 2666–67, the necessary implication of the House Report for the instant case, in its present posture, strongly favors consideration of probable cause issues at post-indictment pretrial hearings.

In footnote 2 of his separate opinion, however, Chief Judge Oakes dismisses the views expressed in the House Report as

"hollow boilerplate," thus enabling him to conclude that the legislative history is clearly hostile to probable cause hearings. This is, to say the least, a quite remarkable assessment of the statement in the House Report. That statement explicitly recognizes the constitutional issue presented in the instant litigation, cites three district court opinions that have decided the issue divergently, and calls upon the federal courts to provide its resolution. It is a very precisely directed passage of legislative history, rather than "boilerplate" of any description.

Nor is this an unusual role for federal courts, even in the absence of explicit congressional invitation. In *United States v. Thirty–Seven (37) Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), for example, the Supreme Court addressed a statute, 19 U.S.C. § 1305(a), which authorized the seizure of obscene material presented for importation into the United States, and required the initiation of forfeiture proceedings in district court to test the validity of the seizure, but omitted any explicit time limits for those proceedings. The Court had held, however, that the first amendment required such limits. *See Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

Rather than strike section 1305(a) as constitutionally invalid, the Court in *Thirty–Seven Photographs* reasoned that "the reading into [§ 1305(a)] of the time limits required by *Freedman* is fully consistent with its legislative purpose," 402 U.S. at 370, 91 S.Ct. at 1405; further that "we possess as much expertise as Congress in determining . . . the speed with which prosecutorial and judicial institutions can, as a practical matter, be expected to function in adjudicating § 1305(a) matters," *id.* at 372, 91 S.Ct. at 1406; and accordingly "construe[d] § 1305(a) to require intervals of no more than 14 days from seizure of goods to the institution of judicial proceedings for their forfeiture and no longer than 60 days from the filing of the action to final deci-

sion in the district court," *id.* at 373–74, 91 S.Ct. at 1407; *See United States v. $8,850*, 461 U.S. 555, 563 n. 13, 103 S.Ct. 2005, 2011 n. 13, 76 L.Ed.2d 143 (construing *Thirty–Seven Photographs*).

Similarly, in *Lee v. Thornton*, 538 F.2d 27 (2d Cir.1976), suit was brought by two motor vehicle owners, whose vehicles were detained by customs officials in Vermont after crossings of the Canadian border, attacking the constitutionality of the federal statutory scheme under which the vehicles had been detained and seeking to recover penalties they had paid to recover their vehicles. We concluded that the federal statutes, as applied to the plaintiffs, "failed to comply with the constitutional requirement of due process of law," 538 F.2d at 31, and "should have been interpreted to require an opportunity for prompt hearing," *id.* We accordingly ruled:

> Balancing, as [*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ] requires, the cost and inconvenience to the government against the seriousness of the deprivation, we hold that when vehicles are seized for forfeiture or as security, action on petitions for mitigation or remission should be required within 24 hours, with notice of the charge, and with opportunity to file a written response and to make an oral appearance and that, if requested, some kind of hearing on probable cause for the detention before an officer other than the one making the charge should be provided within 72 hours if the petition is not granted in full.

> Effected in the absence of such adequate procedures, the exactions from Rich and Lee were unlawful and must be returned.

538 F.2d at 33.

*Lee*, of course, involved a considerably greater graft upon a federal statutory scheme than anything contemplated here. No novel hearings or procedures are envisioned by this opinion. Rather, this opinion would require only that the issue of probable cause be open for consideration in hearings which Congress explicitly envisioned, in the face of a silent statute and ambigu-

ous legislative history on the subject. Especially in view of *Thirty–Seven Photographs* and *Lee*, there can be little doubt concerning this court's authority to require such consideration of the issue of probable cause.[7] The remaining question is whether it would better effectuate the congressional purpose to impose that requirement, or to strike section 853(e)(1)(A) as unconstitutional *in toto.*

There can be even less doubt about the resolution of this question. The pertinent legislative history is unequivocal. As the Supreme Court observed in *Monsanto III,* " '[t]he sole purpose of [§ 853's] restraining order ... provision is to preserve the status quo, *i.e.,* to assure the availability of the property pending disposition of the criminal case.' " *Monsanto III,* 109 S.Ct. at 2665 (quoting Senate Report at 204). Tested against this purpose, it cannot seriously be suggested that the congressional purpose would be better served by eliminating the restraining order provision than by interpreting section 853(e)(1)(A) to allow the consideration of probable cause issues at the post-indictment, pretrial hearings explicitly envisioned by the statute and its attendant legislative history. A total invalidation of section 853(e)(1)(A) would go beyond frustration of the congressional purpose; it would extinguish any possibility of even its partial effectuation.[8]

In sum, the result envisioned by this opinion constitutes an appropriate implementation of congressional policy in the light of constitutional requirements, bearing in mind that "[w]hile the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring); *see also id.* at 610, 72 S.Ct. at 897 (Frankfurter, J., concurring) ("the content of the three authorities of government is not to be derived from an abstract analysis. The areas are partly interacting, not wholly disjointed.").

## C. Vacatur of Panel Opinion.

*Monsanto I* was not explicitly vacated by the in banc court in *Monsanto II. Cf. Beauford v. Helmsley,* 865 F.2d 1386, 1393 (2d Cir.) (in banc) (explicitly vacating panel opinion), *cert. denied,* — U.S. —, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). Nor was it reinstated after the Supreme Court reversed the in banc court. *See Costello v. Wainwright,* 553 F.2d 506 (5th Cir.1977) (per curiam) (in banc) (implying that where in banc decision of a circuit court is reversed by the Supreme Court, original panel opinion can be reinstated as good circuit law only by explicit determination to that effect by in banc court.) Accordingly, in view of the uncertain status of *Monsanto I,* and in light of subsequent developments

---

**7.** The cases cited by Monsanto and amici on this issue do not call for a different result. They typically deal with situations where radical linguistic surgery would have been required for a constitutional preservation of a statutory scheme, frequently one of state origin. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), for example, the Supreme Court would have been required to legislate broad new hearing procedures for the replevin statutes of Florida and Pennsylvania. In the case of state, as distinguished from federal, statutes, furthermore, federal courts have no authority to provide a saving construction. *See Thirty–Seven Photographs,* 402 U.S. at 369, 91 S.Ct. at 1404.

**8.** Chief Judge Oakes speculates that Congress would have abandoned section 853(e)(1)(A) rather than impose the burden upon prosecuto-

rial resources of litigating probable cause issues in the post-indictment, pretrial hearings which Congress explicitly envisioned. Given the paramount purpose of that provision to prevent the pretrial diversion of property subject to forfeiture, *see* Senate Report at 204, this hardly seems likely. Furthermore, the burden on prosecutorial resources would not be heavy. On remand after *Monsanto I,* for example, the probable cause hearing took four days, see *Monsanto III,* 109 S.Ct. at 2661, 2666 n. 10, while the subsequent trial lasted more than six months. It is common, in any event, to require pretrial hearings for the threshold determination of constitutional issues. Finally, if the government finds the pretrial litigation of probable cause issues unduly burdensome in a given case, it can always forgo the imposition or continuation of pretrial restraints and rely upon post-conviction forfeiture.

in *Monsanto II, Monsanto III* and this opinion, we deem it appropriate explicitly to vacate the panel opinion in *Monsanto I*. We reaffirm, however, the ruling therein remanding for a pretrial hearing, but determine that future such hearings shall be governed by a "probable cause" standard.

We note in this regard that we do not reiterate in this opinion the ruling in *Monsanto I* that if the government fails to carry its burden at a post-indictment hearing, fees thereafter advanced to counsel cannot subsequently be recaptured by the government, whatever the outcome of the trial. *See Monsanto I*, 836 F.2d at 84–85. Since the government prevailed in the hearing held by the district court upon remand in *Monsanto I*, that issue is not before us and should be decided in a case that properly presents it. *See Monsanto II*, 852 F.2d at 1411 (Miner, J., concurring in part and dissenting in part); *id.* at 1420–21 (Pratt, J., concurring in part and dissenting in part).

### Conclusion

We conclude that (1) the fifth and sixth amendments, considered in combination, require an adversary, post-restraint, pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte pursuant to 21 U.S.C. § 853(e)(1)(A) (1988); (2) consistent with 21 U.S.C. § 853(e)(3) (1988), the court may receive and consider at such a hearing evidence and information that would be inadmissible under the Federal Rules of Evidence; and (3) grand jury determinations of probable cause may be reconsidered in such a hearing.

The panel opinion in this case, 836 F.2d 74 (2d Cir.1987), is vacated. We reaffirm the ruling therein remanding for a pretrial hearing, but determine that future such hearings shall be governed by a "probable cause" standard.

OAKES, Chief Judge, with whom WINTER, MINER, ALTIMARI, and WALKER, Circuit Judges, join, concurring in part and dissenting in part:

Judge Mahoney's opinion holds, I believe rightfully so, that the Fifth Amendment's due process clause and the Sixth Amendment right to counsel of one's choice require a post-indictment, pretrial probable cause hearing to determine the validity of a restraint of assets made pursuant to section 853(e)(1)(A) of the continuing criminal enterprise statute, 21 U.S.C. § 853 (1988). Although I am mindful of the time-honored teaching that courts should construe a statute so as to avoid potential constitutional problems, *see, e.g., Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (citing *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)), I fear that his opinion, by holding that section 853(e)(1)(A) allows for such a hearing, has crossed the line between interpreting a statute and wholly rewriting it. Because I cannot agree that section 853(e)(1)(A) is amenable to that construction, I believe that the provision must be stricken as unconstitutional.

Given the weighty constitutional concerns presented, the post-restraint, pretrial hearing envisioned by Judge Mahoney necessarily is both meaningful and substantial. This hearing would entail inquiries into whether there is probable cause to believe the restrained assets represent proceeds of the narcotics offense charged in the indictment, and more importantly, whether there is probable cause to believe that the narcotics offense charged in the indictment was in fact committed.

Although I do not retreat from my doubts expressed about such a pretrial hearing,[1] I do not think it necessary to

---

1. First, I am curious as to who will represent the defendant at this hearing. Second, in theory the Government's burden of showing likelihood of success on the merits of the criminal charges and on the issue of forfeitability of the assets is substantial. But, as a practical matter, absent rigorous cross-examination or the production of evidence to show that the defendant's property was earned or derived from legitimate sources, the Government will have little trouble

resort to policy arguments to resolve this question, because on balance, the statute, taken in conjunction with what little pertinent legislative history in fact exists, is decidedly hostile to the type of probable cause hearing Judge Mahoney reads it to authorize. As he acknowledges, and Judge Cardamone points out forcibly, the statute's language requires a hearing for a *pre-indictment* restraining order but is silent regarding one following a *post-indictment* restraining order. *Compare* 21 U.S.C. § 853(e)(1)(B) (1988) with 21 U.S.C. § 853(e)(1)(A) (1988). To the extent that Congress might have allowed for a post-restraint hearing, such a hearing only would have delved into minor housekeeping details, like whether the property seized was the property named in the indictment. *See* S.Rep. No. 225, 98th Cong., 2d Sess., at 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3386. On the other hand, Congress explicitly rejected post-restraint hearings which would have explored substantive matters such as the indictment's underlying basis.

> [I]t is stressed that at [a post-restraint] hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.[2]

*Id.; accord id.* at 196, 1984 U.S.Code Cong. & Admin.News at 3379 (disapproving of court decisions which would allow "challenges to the validity of the indictment").

I suspect that the probable cause hearing Judge Mahoney appends to section 853(e)(1)(A) might impose even more detailed and rigorous proceedings than what Congress had considered and had sought to avoid. He acknowledges that the level of probable cause necessary to secure an indictment is not by itself sufficient to permit a post-indictment restraint of assets under section 853(e)(1)(A). Under his understanding of the proper threshold of probable cause, the Government thus will have to do more than justify the indictment, and in fact will have to make an even stronger showing of probable cause at the hearing than what was necessary to have secured the indictment in the first place.

In enacting section 853(e)(1)(A), Congress sought to vest the Government with the power to restrain a criminal defendant's assets following an indictment, without hamstringing the Government by the constraints we today find constitutionally compelled. The legislative history makes clear that Congress was aware of the significant price these proceedings would impose on scarce prosecutorial and judicial resources, and my reading of section 853(e)(1)(A) and its legislative history leaves me unpersuaded that Congress would have enacted section 853(e)(1)(A) had it known that such proceedings were constitutionally mandated. Given the squeeze already exerted on prosecutorial and judicial resources by the flood of narcotics cases inundating the federal courts, I am not willing to impute to Congress an intent that would further upset that precarious balance—especially when congressional intent so decisively leans to the contrary. The burden should

---

meeting *that* burden. Thus, the mini-trial would do little to protect the interests of either the defendant or the adversarial system. Finally, we should be hesitant to create this new procedural step in light of the Supreme Court's firm rejection of the new universe of mini-trials in respect to class actions. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). *Monsanto I,* 836 F.2d at 87 (Oakes, J., dissenting).

**2.** Our observation in *United States v. Gelb,* 826 F.2d 1175 (2d Cir.1987) (per curiam), that in some instances a post-restraint hearing may be necessary to "fine-tune" the initial restraining order, *see id.* at 1177 (discussing the similarly-worded forfeiture provision under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963(d)), provides no refuge for the broad-reaching probable cause hearing Judge Mahoney would append to section 853. I am similarly unpersuaded that the hollow boilerplate from the House report to the effect that "[n]othing in [the forfeiture] section is intended to interfere with a person's Sixth Amendment right to counsel," *see* H.R.Rep. No. 845, 98th Cong., 2d Sess., pt. 1, at 19 n. 1 (1984), in any way sanctions such a hearing.

now rest on Congress to legislate consonant with constitutional commands.

CARDAMONE, Circuit Judge, dissenting:

The underlying issue posed on this appeal is whether the pretrial restraint provision of the Comprehensive Forfeiture Act of 1984 (Act), 21 U.S.C. § 853(e) (1988), grants a district court authority to hold a pretrial hearing—after it issues an order restraining defendant's property—in order to determine whether probable cause exists to continue such restraint of allegedly forfeitable assets until a trial on the merits. To resolve this issue we asked counsel to address two questions: (1) Does the Due Process Clause require such a hearing before a pretrial restraining order may be imposed on those assets a defendant needs to retain counsel of choice? (2) If so, may this requirement be judicially imposed, or must it be legislated? My colleagues believe that the statute denies due process because as it is written it fails to provide for a hearing. The majority therefore would judicially engraft a hearing requirement on Congress' enactment. The minority would strike the statute as unconstitutional. I am unable to concur in either proposition and write in this case to express my view that the statute as presently framed is constitutional.

## I

Our review today of these statutory and constitutional questions is instructed by two recent Supreme Court decisions regarding appellant's rights under the Sixth Amendment, *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), and a companion case, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), both of which were decided subsequent to our *Monsanto, en banc*, decision. In those cases the Supreme Court clarified two points pertinent to this appeal: first, it indicated that the discretion afforded by the statute's language—"the court may enter a restraining order"—does not allow a trial court to use its equitable power to

balance a defendant's hardships against the merits of the government's case to determine whether such an order should issue, *Caplin & Drysdale*, 109 S.Ct. at 2650–2651; *Monsanto*, 109 S.Ct. at 2664–2665. Second, the Court held that a defendant's limited right to counsel of choice is not impermissibly infringed by the forfeiture statute. *Caplin & Drysdale*, 109 S.Ct. at 2656; *Monsanto*, 109 S.Ct. at 2666–67.

In my view, now informed by those Supreme Court cases, there is no due process requirement for a pretrial hearing on the merits. If the provisions of 21 U.S.C. § 853(e)(1)(A) (1988) that we review are, as I believe, constitutional then we need not consider or decide the second question of how to include a hearing requirement. Because the position I take differs in substance from that of my respected colleagues, Chief Judge Oakes and Judge Mahoney, it is necessary to set forth the reasons that led me to it.

## A.

To determine whether a pretrial hearing requirement is consistent with the aim of the Act, we must turn first to its language. Section 853(e)(1)(A) states that a protective order may be issued

> upon the filing of an indictment or information charging a violation ... and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture.

Nothing in those words suggests that *after* an indictment has been filed a hearing must be held before a court may issue a protective order. *See United States v. Bissell*, 866 F.2d 1343, 1349, 1352 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989). Significantly, when the government seeks to restrain assets *prior* to the filing of an indictment a different procedure is provided. In that case a protective order may be issued only if—after notice to persons who may have an interest in the property and an opportunity for a hearing—the court determines that (1) there is a substantial probability

that the government will prevail on the merits of the forfeiture claim, (2) the protective order is necessary to protect the government's interest in the property, and (3) the need for the order outweighs the hardship it causes. 21 U.S.C. § 853(e)(1)(B). Such a pre-indictment order may not be effective for more than 90 days. *Id.*

The distinctions Congress made in the treatment of asset restraint in the pre- and post-indictment periods lends strong support to the conclusion that the legislature's omission of a hearing requirement after an indictment is filed was purposeful. *See United States v. Moya–Gomez*, 860 F.2d 706, 727 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *see also INS v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (omission of language in one part of a statute presumed intentional).

### B.

The legislative history of § 853 further supports the view that Congress planned for the trial on the merits to be the sole challenge to the forfeitability claim. The statute was passed in an attempt to remedy the ineffectiveness of the forfeiture provisions contained in the Continuing Criminal Enterprise Act, 21 U.S.C. § 848 (1988), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1988). S.Rep. No. 225, 98th Cong., 2d Sess. 191–92, 202, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3374–75, 3385 [Senate Report]. In particular, Congress sought to enhance the sanction of criminal forfeiture as a law enforcement tool in combatting racketeering and drug trafficking crimes. *Id.*

It stated that the stringent standard formerly applied by courts before issuing restraining orders, in addition to making the orders difficult to obtain, discouraged prosecutors from seeking them because the papers filed with the application often caused premature disclosure of the government's case and its trial strategy, and risked the safety of witnesses and victims whose statements were required to support the application. Senate Report at 196, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3379.

To alleviate this state of affairs Congress drafted a statute specifically providing that an indictment shall contain an allegation that the property to be restrained is subject to forfeiture upon conviction. The Act makes forfeitability of assets a substantive charge in the indictment, *see Caplin & Drysdale*, 109 S.Ct. at 2654 n. 5. As a consequence, the indictment itself finds probable cause that the assets sought to be restrained are forfeitable. *See United States v. Musson*, 802 F.2d 384, 386 (10th Cir.1986). The Senate Report elaborates:

> Thus, the probable cause established in the indictment or information is, in itself, to be a sufficient basis for issuance of a restraining order. While the court may consider factors bearing on the reasonableness of the order sought, it is not to "look behind" the indictment or require the government to produce additional evidence regarding the merits of the case as a prerequisite to issuing a post-indictment restraining order.

Senate Report at 202, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3385.

The prosecution's ability to prepare its case without being forced to "tip its hand" prematurely was of paramount importance to the drafters and provides a persuasive reason for delaying a full adversarial hearing on the merits of the government's case during the post-restraint, pretrial period. The legislative history makes clear that in the post-restraint period "the court is not to entertain challenges to the validity of the indictment." Senate Report at 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3386.

Yet a trial court's discretionary authority is not completely eliminated. The Act states that upon application of the United States the court "may" enter a protective order. 21 U.S.C. § 853(e)(1). Concededly, the latitude of that discretion arising from use of the word "may" has been narrowed by the Supreme Court's interpretation of the Act. But the statute provides that a court may "enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property ..." § 853(e)(1). Thus, a trial

court retains discretion in determining what measures are necessary to protect the government's interest in the property. *Id.; see also* Senate Report at 202, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3385 ("the court may consider factors bearing on the reasonableness of the order").

In addition, the legislative history expressly refers to the court's authority to hold a post-restraint hearing to determine if the order imposed should be modified. At such hearing the court's function is limited to correcting "clearly improper" orders:

> This provision does not exclude, however, the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (*e.g.*, where information presented at the hearing shows that the property restrained was not among the property named in the indictment). However, *it is stressed that at such a hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.*

Senate Report at 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3386 (emphasis added).

This retained discretionary authority allows the trial court to issue a restraining order employing the least restrictive means needed to protect the government's interest, or to modify an unnecessarily restrictive order. Hence, in the post-restraint, pretrial period the court's role is primarily ministerial. *See Monsanto*, 109 S.Ct. at 2665. The legislative history could not be more plain in its statement that "the court is not to entertain challenges to the validity of the indictment." Adjudication of the merits of the forfeiture must take place at, not before, trial. *See Bissell*, 866 F.2d at 1349, 1352.

Having demonstrated that the language and legislative history of § 853 make no provision for a pretrial adversarial hearing on the merits of the forfeiture claim, the next question is whether this statutory scheme violates the Fifth Amendment's proscription against deprivation of property without due process of law.

## II

The starting point on any challenge to a statute's constitutionality must be the presumption that Congress was well aware of its obligation to draft laws that comply with the Constitution. *See, e.g., DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties...."). A facial challenge will succeed only if appellant establishes that under no set of circumstances would the challenged statute be valid. That it may operate unconstitutionally under some set of circumstances and constitutionally under others will not suffice to render a statute wholly invalid. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

The Act permits a restraint of a defendant's property. We recognize that the restraint of a person's assets, however temporary, is a deprivation of property, *see Fuentes v. Shevin,* 407 U.S. 67, 84–86, 92 S.Ct. 1983, 1996–97, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969), and to withstand constitutional scrutiny such deprivation must be implemented in a fair manner, that is, in accordance with due process. *Mathews v. Eldridge,* 424 U.S. 319, 332–333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Whether the process afforded is sufficient may be determined by balancing three factors: the private interest affected, the risk of an erroneous deprivation and the possible value of additional or substitute procedural safeguards, and the government's interest. *Id.* at 335, 96 S.Ct. at 903; *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Weighing the challenged provisions of the Act in light of those factors, I am convinced that the government's interest in delaying until trial an adversarial hearing on the merits of the restraint of assets outweighs the minimal intrusion a restraining order imposes upon a defendant.

### 1. Defendant's Interest in Unrestrained Use of Assets Pending Trial

It must be emphasized at the outset that a protective order merely restrains defen-

dant's property; it does not seize it. A warrant authorizing actual seizure of property subject to forfeiture may be issued only upon a district court's determination that there is probable cause to believe that the property seized would be forfeitable upon conviction and that a protective order is insufficient to assure the property's availability. *See* 21 U.S.C. § 853(f).

Defendant claims his interest in the use of his assets pending trial is made greater because he needs them to hire his counsel of choice. In examining this factor—defendant's private interest as affected by official action—we cannot turn a blind eye to the Supreme Court's discussion of how the forfeiture provisions affect a defendant's Sixth Amendment right to counsel.

The Supreme Court's declaration that the Sixth Amendment is not violated by the forfeiture provisions here at issue, *Caplin & Drysdale*, 109 S.Ct. at 2656, leads to the logical conclusion that appellant's asserted interest in using the assets to retain counsel should not weigh more when that interest is considered under the Fifth Amendment. *Id.* This is especially true given that even absent a protective order any forfeitable assets used to retain an attorney could ultimately be seized by the government upon a verdict in its favor via the statute's "relation back" provision. *See* 21 U.S.C. § 853(c); *Monsanto*, 109 S.Ct. at 2660–61 n. 3, 2667; *Bissell*, 866 F.2d at 1349; *Moya–Gomez*, 860 F.2d at 720. Thus, issuance of a pretrial protective order should have *no* effect on a defendant's ability to retain counsel of choice, for even in the absence of pretrial restraint an attorney is on notice that he will not be able to keep fees collected from assets that are ultimately found forfeited after trial. *Monsanto*, 109 S.Ct. at 2660–61 n. 3. A pretrial restraint of assets therefore places no greater restriction on a defendant's choice of counsel than the post-trial forfeiture and relation back provisions upheld by the Supreme Court in *Monsanto* and *Caplin & Drysdale*.

Further, when assessing the property interest burdened by § 853 we must bear in mind that the order is temporary and may not ripen into a permanent taking of defendant's assets until after a full trial on the merits. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1988), ensures that such a trial will be held within a reasonable time. *See Bissell*, 866 F.2d at 1353; *United States v. Draine*, 637 F.Supp. 482, 485–86

(S.D.Ala.1986), *aff'd*, 811 F.2d 1419 (11th Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987).

The minimal nature of the restraint provided for in § 853 distinguishes it from a similar civil forfeiture provision, 21 U.S.C. § 881(a)(7) (1988). The latter statute was at issue in our recent decision in *United States v. The Premises and Real Property at 4492 South Livonia Rd.*, 889 F.2d 1258 (2d Cir.1989), *reh'g denied*, 897 F.2d 659 (2d Cir.1990). *Livonia* held that § 881(a)(7) as applied to the seizure of a home without a hearing was improper. Considering the heightened expectation of privacy and freedom from governmental intrusion in a person's home, we stated that defendant's interest in his home was not diminished by an occupancy agreement that allowed him to remain there pending trial since the occupancy was a matter of grace, not of right. *See* 889 F.2d at 1264–1265. We observed that the government's interest "may be met by less restrictive means than seizure, for example, by the filing of a lis pendens ... along with a restraining order or bond requirement." *Id.* at 1265. The protective order issued in the instant case pursuant to § 853 is precisely the sort of less intrusive measure we endorsed in *Livonia*. *Cf. Monsanto*, 109 S.Ct. at 2666 ("Where respondent was not ousted from his property, but merely restrained from disposing of it, the governmental intrusion was even less severe than those permitted by our prior decisions").

Moreover, the protective order restrains defendant's property, not his person. The fact that a defendant seeking to be free on bail pending trial is afforded a full adversarial hearing at which the sufficiency of the evidence against him may be considered, 18 U.S.C. § 3142(f), 3142(g)(2) (1988), may not be construed to mean that a similar protection is required when restraint of a person's property is implicated. *Cf. Monsanto*, 109 S.Ct. at 2666. The Bail Reform Act, like § 853, is directed at insuring that the subject of the order is present at the time of trial. A defendant at a bail hearing is not permitted to challenge the grand jury's finding of probable cause supporting the indictment, but is limited to demonstrating that he is not likely to flee pending trial and is not a threat to the safety of the community. Analogously, a defendant contesting the entry of a protective order under § 853 may not challenge

the merits of the temporary restraint of his property, but may move to modify the order on the grounds that a less restrictive means would effectively protect the government's interest. Thus, the private interest of the defendant is adequately safeguarded.

### 2. Risk of Erroneous Deprivation

Because due process is a flexible concept a less stringent procedural safeguard often may be sufficient to permit a minimal intrusion to withstand constitutional scrutiny and to protect against an erroneous deprivation. *See United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The minimal nature of the intrusion imposed under § 853 has been noted. Because the protective order merely effects the defendant's ability to transfer his assets—and not their ownership—only where a defendant seeks to sell or alienate them pending trial will there be inconvenience. Here of course the deprivation was not imposed in the absence of any process because a finding of probable cause established by the indictment was necessary to support the restraining order. *Cf. Livonia*, 889 F.2d at 1264; *Musson*, 802 F.2d at 386. Thus, prior to issuance of a restraining order a grand jury must have found probable cause showing that the restrained assets are forfeitable. This requirement reduces the risk of an erroneous deprivation.

As noted, the risk of an erroneous restraint of property is irrelevant to a defendant's ability to retain counsel of choice in light of the statute's "relation back" provision, *see* 21 U.S.C. § 853(c); *Monsanto*, 109 S.Ct. at 2660–61 n. 3; *Moya–Gomez*, 860 F.2d at 720. As for any other possible hindrances, I believe they are slight in view of the minimal intrusion upon a defendant's property rights and the district court's power to fashion a protective order. The district court has discretion to remedy a "clearly improper" order, and to tailor one that restrains assets beyond what is needed to ensure their availability. Senate Report at 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3386; *Monsanto*, 109 S.Ct. at 2665. For example, were the restrained assets to be the inventory of an ongoing business, defendant's need to free those assets pending trial, as well as the government's interest, might be adequately secured by requiring defendant to post a bond.

Finally, the possibility of prosecutorial abuse under § 853 should not weigh heavily in our analysis. As the Supreme Court stated in *Caplin & Drysdale* in rejecting the same argument, "[c]ases involving particular abuses can be dealt with individually by the lower courts, when (and if) any such cases arise." *Id.* at 2657.

### 3. The Government's Interest

Finally, the government's interest in an effective forfeiture mechanism must be considered. As outlined in the Senate Report, the Act was aimed at promoting the public policy of combatting racketeering and drug trafficking crimes as effectively as possible. Forfeiture promotes this goal by depriving criminals of their "ill-gotten gains," by financing a fund to support law-enforcement efforts, and by reducing the economic power of organized crime and drug enterprises. *Caplin & Drysdale*, 109 S.Ct. at 2654–55. Congressional concerns initially focused on making the protective order easy to obtain to prevent the dissipation of assets prior to conviction. Senate Report at 196, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3379. Other interests are equally pertinent in the post-restraint, pretrial period. One, of paramount importance, is avoiding the premature disclosure of the prosecution's case and its trial strategy. *Id.* A second is the conservation of prosecutorial resources. *Id.* at 197, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3380. Given that the burden of proof needed to restrain assets is only one of "probable cause," *Monsanto*, 109 S.Ct. at 2666–67, a showing of which is prerequisite to handing down an indictment leading to the initial restraint, a hearing requirement would only burden the prosecution—and possibly jeopardize its case—with the need to establish probable cause a second time and in the presence of the defendant. Far from being equivocal, the legislative history demonstrates that Congress was clearly opposed to opening up the government's case before trial. Senate Report at 202–203, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3385–86. Hence, the government interest is strong.

### III

After balancing these factors, it is plain that the temporary restraint imposed by the protective order is outweighed by the government's interest in preserving forfeitable assets, maintaining an effective trial

strategy, and conserving prosecutorial resources. In cases where an order is improperly drawn to include assets not listed in the indictment, or where utilizing a bond or other mechanism sufficient to protect the government's interest in the property in lieu of restraining specific assets would save a party from undue hardship, the trial court has ample discretionary authority to modify its order. The grand jury's initial determination of probable cause, coupled with the court's authority to limit the protective order to the least intrusive means necessary to protect the government's interest, provides sufficient due process for defendants whose assets are restrained pending trial.

Accordingly, I vote to withdraw and vacate the prior panel opinion in this case, 836 F.2d 74 (2d Cir.1987), and dissent from the majority's remand and its direction to the district court to conduct a pretrial hearing.

### Order

Feb. 28, 1991.

A petition for rehearing containing a suggestion that the action be reheard in banc having been filed herein by appellant, Peter Monsanto.

Upon consideration by the panel that heard the appeal, it is

Ordered that said petition for rehearing is DENIED.

It is further noted that the suggestion for rehearing in banc has been transmitted to the judges of the court in regular active service and to any other judge that heard the appeal and that no such judge has requested that a vote be taken thereon.

### ORDER

April 4, 1991.

The matter of the adequacy of the pretrial hearing conducted by Judge Ward pursuant to the remand in *Monsanto I* has been referred to the original panel hearing *Monsanto I* consisting of Oakes, Chief Judge, and Cardamone and Mahoney, Circuit Judges, by the entire court. In light of Judge Ward's hearing, under the standard of the original panel opinion (probability of convincing the jury beyond a reasonable doubt) and the en banc ruling that "future such hearings shall be governed by a probable cause standard," *U.S. v. Monsanto*, 924 F.2d 1186, 1202 (2d Cir.1991) (en banc), Judge Ward's hearing more than satisfies the requirements of the ultimate en banc ruling.

Moreover, there would be good reason for holding that there has been a waiver of the pre-trial hearing issue by the fact that it was not raised on the direct appeal.

Therefore, the petition for rehearing, insofar as it relates to the adequacy of Judge Ward's hearing following the original remand, is in all respects denied.[1]

---

1. While an order has previously been entered denying the petition for rehearing addressed to the en banc court, the issue raised herein has been specially reviewed by the original panel above named and a copy of this order has been circulated to the members of the en banc court, none of whom has interposed any objection thereto.