**14-1625-cr**
*United States v. Cosme*

In the

United States Court of Appeals

For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: OCTOBER 24, 2014
DECIDED: AUGUST 10, 2015

No. 14-1625-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

WILLIAM R. COSME, also known as William R. Cosmo,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 13-cr-43 – Harold Baer, Jr., *Judge*.

————

Before: WALKER, CABRANES, and CARNEY, *Circuit Judges*.

————

William R. Cosme challenges the government's restraint of his property during his prosecution on charges of wire fraud. Upon Cosme's arrest in 2012, the government seized several of his assets, including his cars and two bank accounts. In August 2013, the

district court issued an order allowing the government to hold the seized property until the conclusion of its criminal case. Cosme then unsuccessfully moved to vacate the order on the basis that it violated his Fourth Amendment rights because the government seized his assets without seeking a warrant. In addition, Cosme argues on appeal that there has been no judicial finding as to whether probable cause supports the forfeitability of the seized assets. We find merit in both arguments and hereby hold that exigent circumstances do not support the government's indefinite seizure in the absence of a warrant. We remand for the district court to determine whether probable cause supports the forfeitability of Cosme's assets. Accordingly, we **VACATE** the district court's denial of Cosme's motion to vacate the August 6, 2013 order and **REMAND** for further proceedings consistent with this opinion.

————

JEFFREY E. ALBERTS, Pryor Cashman LLP, New York, NY, *for Defendant-Appellant*.

MARTIN S. BELL (Sarah E. Paul and Brian A. Jacobs, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

William R. Cosme challenges the government's restraint of his property during his prosecution on charges of wire fraud. Upon arresting Cosme in 2012, the government seized several of his assets, including his cars and two bank accounts. In August 2013, the district court issued an order allowing the government to hold the seized property until the conclusion of its criminal case. Cosme then unsuccessfully moved to vacate the order on the basis that it violated his Fourth Amendment rights because the government seized his assets without seeking a warrant. In addition, Cosme argues on appeal that there has been no judicial finding as to whether probable cause supports the forfeitability of the seized assets. We find merit in both arguments and hereby hold that exigent circumstances do not support the government's indefinite seizure in the absence of a warrant. We remand for the district court to determine whether probable cause supports the forfeitability of Cosme's assets. Accordingly, we **VACATE** the district court's denial of Cosme's motion to vacate the August 6, 2013 order and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### Cosme's Arrest

Cosme was arrested on December 19, 2012 on charges of wire fraud. According to the criminal complaint supporting the arrest, Cosme defrauded an international school in Korea of approximately $5.5 million. The complaint alleges that Cosme represented that he would invest the school's money but instead used the money to enrich himself.

On the day of Cosme's arrest, the government seized several of his assets, including a Cadillac that was parked in plain view in his driveway, and a Lamborghini and a Ferrari in his garage that were discovered during a protective sweep. During an inventory search of the cars, officers found and seized a bag containing $634,894 in currency.

That same day, the government delivered letters to Scottrade and Sterling National Bank requesting that they freeze Cosme's accounts (the "bank accounts"), believed to contain proceeds of unlawful activity, pursuant to civil forfeiture provisions 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 981(b)(2)(B)(ii). In its letters to the financial institutions, the government stated that it had "probable cause to believe that the . . . property is subject to seizure and forfeiture." App'x 161. The letters also stated that the government

was "in the process of obtaining a seizure warrant" from the court for the accounts but that "exigent circumstances require that the Subject Property be frozen immediately to prevent it from being dissipated." App'x 161. The government cited *United States v. Daccarett*, 6 F.3d 37 (2d Cir. 1993), and 18 U.S.C. § 981(b)(2)(B)(ii) in support of this last statement and noted that, upon the warrant's issuance, a copy of the warrant would be provided to the letters' recipients. The government never sought a warrant for the seized property.

On January 17, 2013, Cosme was indicted in the District Court for the Southern District of New York. The indictment alleged that the international school had transferred $5.5 million to Cosme upon his promise to invest it. Instead, the indictment alleged, Cosme spent the money on himself and otherwise misappropriated it. The indictment listed a series of purchases made by Cosme using the money, including a Cadillac Escalade, a Lamborghini Gallardo, a Nissan Juke, and a Ferrari 458. In a section entitled "Forfeiture Allegation," the indictment stated that Cosme "shall forfeit" the listed property, which included, in addition to the four automobiles, funds held by Scottrade, Inc., Sterling National Bank, Chase Investment Services, and JP Morgan Chase banks, as well as the seized $634,894 in currency. App'x 34-35. In its brief on appeal, the

government acknowledges for the first time that the indictment's forfeiture allegations were "merely notice provisions that were not subject to a grand jury vote." Appellee Br. 39. On July 5, 2013, the government filed a Bill of Particulars that listed the same property as subject to forfeiture.

**The August 6, 2013 Order and the Stipulations**

In July 2013, the government moved *ex parte* for a pretrial restraining order applicable to the seized assets. At a conference on August 6, 2013 before the district court (Harold Baer, Jr., *Judge*), the parties discussed the proposed order, which Cosme and his attorney had not seen prior to the conference. The district court reviewed the property seized and attempted to determine its value. After describing it on the record, the district court signed the pretrial restraining order and provided a copy to Cosme, who offered no objections to its entry. By its terms, the August 6, 2013 restraining order permitted the government to "maintain custody" of the seized assets "through the conclusion of the pending criminal case." App'x 165-66. As the government was by then seeking only criminal forfeiture, the order relied on 21 U.S.C. § 853, a criminal forfeiture statute, for its authority and stated that the property was "already in the lawful custody of the Government." App'x 72. The order also

cited 18 U.S.C. § 983(a)(3)(B)(ii)(II) to preserve the government's ability to later pursue civil forfeiture.

At the same conference, Cosme's attorney asked to be relieved because of the conflict between his position as a court-appointed lawyer and Cosme's potential *Monsanto* hearing, the purpose of which would be to obtain the release of seized funds in order to hire a replacement lawyer.

On September 18, 2013, the parties appeared again before the district court to discuss a stipulation (the "First Stipulation"), in which the government agreed to release the seized currency in the amount of $634,894 to enable Cosme to fund his defense. In exchange, Cosme promised that "he [would] have access to sufficient unrestrained assets to fund his defense throughout the course of the [criminal] case, and that, as a result, he [would] not seek a *Monsanto* hearing in this case with respect to any restrained accounts, currency, or property, including but not limited to the Accounts, Currency, and Property listed in the Bill of Particulars." App'x 92. He further agreed "not to raise on appeal any denial by the Court of a *Monsanto* hearing." *Id.* At the conference, the district judge confirmed that Cosme understood the terms of the stipulation. He told Cosme that he was waiving the right to "come back and ask for more money," App'x 79, and Cosme acknowledged that "the

7

stipulation does waive some due process" and includes "other waivers which [he] accepted," App'x 77-78. The district court signed the First Stipulation on September 25, 2013, and the following day, Cosme's sixth lawyer, Maurice Sercarz, entered an appearance.

On January 8, 2014, Cosme entered into another stipulation (the "Second Stipulation"), in which the government agreed that $407,000 held in an escrow account by attorney Sercarz could be released to a new attorney, David Touger, who, with the court's approval, relieved attorney Sercarz. Cosme confirmed with reference to these funds that he had "access to sufficient unrestrained assets to fund his defense," and he again agreed "not to raise on appeal any denial by the Court of a *Monsanto* hearing in this case." App'x 97.

A few weeks later, on January 23, 2014, attorney Steven Kessler (Cosme's eighth lawyer) filed a notice of appearance.

**Cosme's Motion to Vacate the August 6, 2013 Order**

On February 14, 2014, Cosme moved to vacate or modify the district court's August 6, 2013 order. Cosme argued, *inter alia*: (1) that the seizure of his assets was unlawful pursuant to the Fourth Amendment because the government had not obtained a warrant and exigent circumstances did not justify the seizure; (2) that the order violated his Fifth Amendment rights to due process because

the government's application was *ex parte*; and (3) that the order violated his Sixth Amendment rights because he did not have enough money to retain his counsel of choice.

On March 27, 2014, the district judge informed the parties at a conference that he intended to deny Cosme's motion but that he would "permit a *Monsanto* hearing" in the "interest of justice" if Cosme requested one. App'x 213. The next day, the district court denied Cosme's motion to vacate the order with respect to all of the seized assets except the bank accounts, which might be subject to a *Monsanto* hearing. On March 31, 2014, Cosme informed the district court that he "intends to seek a *Monsanto* hearing." App'x 242.

On April 21, 2014, the district court issued an opinion denying without a hearing Cosme's motion to vacate the August 6, 2013 order of seizure. The district court stated that "[t]he Government made a sufficient showing of probable cause by virtue of the Indictment, which included the forfeiture allegation," citing *Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014), in support. App'x 250. The district court's opinion also denied Cosme's request for a *Monsanto* hearing on the basis that Cosme waived that right "both in writing and orally," App'x 253, and that Cosme failed to show that he did

not have sufficient alternative assets to fund his defense as required by *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).

Cosme filed a timely notice of appeal.

**DISCUSSION**

I.    **Waiver**

As a threshold matter, the government argues that Cosme waived his right to appeal the restraints on his property by failing to object during the August 6, 2013 conference and by entering into the two stipulations.

A waiver requires the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  As a corollary, if a "party consciously refrains from objecting as a tactical matter, then that action constitutes a true 'waiver,' which will negate even plain error review." *United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995).

Cosme's conduct at the August 6, 2013 conference does not reveal intentional waiver of all rights to appeal the pretrial restraining order. In that conference, Cosme challenged the restraints on his property by raising objections to the seizures. He protested, for example, that the seized assets "far exceed" the theft amount alleged, App'x 56, and argued that the "[t]he burden is on

10

[the Government], right, of proving the money is tainted," App'x 62. He also timely sought to vacate the order before the district court. *Cf. Olano*, 507 U.S. at 731 (noting that a right is forfeited through the failure to timely object in the district court).

The stipulations present a closer question. However, we do not read them as waiving the Fourth and Fifth Amendment claims that Cosme brings here. In the First Stipulation, Cosme agreed that "he will not seek a *Monsanto* hearing in this case with respect to any restrained accounts, currency, or property, including but not limited to the Accounts, Currency, and Property listed in the Bill of Particulars." App'x 92. He also agreed "not to raise on appeal any denial by the Court of a *Monsanto* hearing in this case." *Id.* The relevant language of the Second Stipulation exactly mirrored that of the First. App'x 97.

Both stipulations were narrowly phrased and specifically addressed only Cosme's right to a *Monsanto* hearing. Both stipulations were intended, by their terms, to cover only Cosme's Sixth Amendment-protected "access to sufficient unrestrained assets to fund his defense." App'x 92, 97. Neither stipulation referenced Cosme's Fourth or Fifth Amendment rights. Thus we conclude that these stipulations did not effect a waiver of the Fourth and Fifth Amendment claims that Cosme now asserts.

11

A *Monsanto* hearing vindicates a defendant's Sixth Amendment right to counsel by testing in an adversary hearing whether seized assets are properly forfeitable in circumstances where the defendant has insufficient assets from which to fund his defense. *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir. 1991) (en banc) (defining the required process as "an adversary, post-restraint, pretrial hearing as to probable cause that . . . the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets"), *abrogated in part on other grounds by Kaley v. United States*, 134 S. Ct. 1090 (2014). *Monsanto*, however, dealt specifically with the Sixth Amendment and, as incident to that, the defendant's Fifth Amendment right to a hearing on that question. *Id.* at 1191 (holding that "a pre-trial adversary hearing is required where the question of attorney's fees is implicated" (internal quotation marks omitted)). *Monsanto* did not mention, let alone discuss, a defendant's rights under the Fourth Amendment and it referenced the Fifth Amendment only as "taken in combination" with the Sixth Amendment. *Id.* at 1192.

Because Cosme's stipulations waived only his right to a *Monsanto* hearing, they do not reach his Fourth Amendment claim or his Fifth Amendment due process claim relating to the government's *ex parte* application for the order that was entered on August 6, 2013.

The government could have sought a broader waiver but did not do so. Consequently, although Cosme waived the ability to contest the seizure of his property based on the Sixth Amendment, he did not waive his right to contest it under the Fourth and Fifth Amendments.

Cosme is, however, limited in *how* he may challenge the Fourth and Fifth Amendment implications of the seizure. This court has instructed that *Monsanto* hearings are required only to protect a defendant's "constitutional right to use his or her own funds to retain counsel of choice"—a right that is, however, "not implicated unless the restraint actually affects the defendant's right to choose counsel and present a defense." *Bonventre*, 720 F.3d at 131. Indeed, before a court will grant a *Monsanto* hearing, it demands a "threshold showing" of insufficient assets to fund counsel of choice, *id.*, such that the hearing arises exclusively to vindicate Sixth Amendment rights.[1] Having explicitly confirmed his sufficient access to funds for his defense and having expressly waived his right to a *Monsanto* hearing and the related Sixth Amendment challenges in the two stipulations, Cosme has no independent

---

[1] Even if Cosme had not properly effected waiver of his right to a *Monsanto* hearing, we see no reason, as a factual matter, to disturb the District Court's alternative rationale that Cosme "has not come close to making an adequate showing of indigence" as required by *Bonventre*. App'x 254.

13

constitutional entitlement to an adversarial hearing on his Fourth and Fifth Amendment challenges.[2]

Cosme's Fifth Amendment claim, moreover, is easily rejected and need not concern us further.[3] With these principles in mind, we now turn to Cosme's Fourth Amendment claim.

## II.     Probable Cause Determination

Cosme argues that the restraining order issued on August 6, 2013 violates the Fourth Amendment because there was never a judicial finding of probable cause. We review this question of law *de novo*. *See Bonventre*, 720 F.3d at 128. After examining the record, we

---

[2] We note also that several sister circuits have indicated that a pretrial, post-deprivation adversarial hearing is not required absent Sixth Amendment concerns. *See, e.g.*, *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("If a defendant fails to persuade the court [that he lacks unrestrained funds sufficient to hire counsel of his choice], then the private interest of the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976),] calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing"); *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001) ("In sum, a defendant must show a bona fide need to utilize seized assets to conduct his defense in order to be entitled to a hearing" (alterations and internal quotation marks omitted)).

[3] We find without merit Cosme's argument that the government's *ex parte* application for the August 6, 2013 order violated his Fifth Amendment right to due process. The motion may have been made *ex parte*, but the order was not issued *ex parte*. Before it was signed, both parties discussed the order extensively at the conference before the district judge on August 6, 2013. At the conference, Cosme gave no indication that he wanted to review the order further, nor did he object when the district judge signed it. Because Cosme had notice and an opportunity to be heard before the order was issued, we find no due process violation. *See United States v. Premises & Real Prop. at 4492 S. Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1263 (2d Cir. 1989) ("As a general rule, due process has been held to require notice and an opportunity to be heard prior to the deprivation of a property interest . . . .").

agree that no proper finding of probable cause has occurred in this case and, thus, we must remand the case to the district court to determine whether probable cause supports the forfeitability of the restrained property.

Government seizures of property in criminal cases must comply with the Fourth Amendment. While "the government need not obtain a judicial determination of probable cause prior to seizure," it must establish probable cause if a defendant protests restraints on his property. *Daccarett*, 6 F.3d at 50 (stating that "the fourth amendment mandates the existence of probable cause at the time of seizure").

The government's switch from civil forfeiture to criminal forfeiture in this case does not immunize it from having to demonstrate probable cause. When it first seized Cosme's property in 2012, the government cited civil forfeiture provision 18 U.S.C. § 981(b)(2)(B)(ii).[4] That provision allows the government to seize

---

[4] 18 U.S.C. § 981(b)(2)(B) states:

> 2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if-- . . . (B) there is probable cause to believe that the property is subject to forfeiture and-- (i) the seizure is made pursuant to a lawful arrest or search; or (ii) another exception to the Fourth Amendment warrant requirement would apply . . . .

property without a warrant if "there is probable cause to believe that the property is subject to forfeiture" and an "exception to the Fourth Amendment warrant requirement would apply." 18 U.S.C. § 981(b)(2)(B)(ii). At the August 6, 2013 hearing, the government, at that point seeking only criminal forfeiture, relied on 21 U.S.C. § 853(e),[5] which enables a court to "enter a restraining order or injunction . . . or take any other action to preserve the availability of property . . . upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered . . . ." *See* 18 U.S.C. § 983(a)(3)(C) ("If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute."). We identify no inherent problem with the government's pursuit of criminal

---

[5] 21 U.S.C. § 853(e)(1) states:

(e) Protective orders (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section-- (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section . . . .

forfeiture after first initiating civil forfeiture proceedings,[6] but this tactic cannot serve as a tool for the government to seize assets without ever showing probable cause. It is evident from the district court's April 21, 2014 opinion that, when making its probable cause finding, the district court relied on a mistaken understanding of what the grand jury voted on in the indictment. In particular, the district court cited to *Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014), which suggests to us that it believed that the grand jury had voted on the forfeiture allegations. In *Kaley*, the Supreme Court held that a judge could not "second-guess[]" a grand jury's finding of probable cause. *Id.* ("If judicial review of the grand jury's probable cause determination is not warranted (as we have so often held) to put a defendant on trial or place her in custody, then neither is it needed to freeze her property."). Here, however, as the government concedes in its brief on appeal, the grand jury did not vote on the forfeiture allegations, which were simply notice provisions not subject to a grand jury vote. Accordingly, *Kaley* does not apply, and the district court was required to make its own probable cause finding where none had yet been made in the case.

---

[6] *See United States v. Candelaria-Silva*, 166 F.3d 19, 43 (1st Cir. 1999) ("[I]t is perfectly proper to begin a forfeiture action with a civil seizure, and then to convert the action to a criminal forfeiture once an indictment is returned." (internal quotation marks omitted)).

The government argues that this error is harmless, but we disagree. Although the substantive allegations in the indictment mention the assets in connection with the criminal conduct, at no point in this case has the government had to demonstrate that it had probable cause to restrain Cosme's assets as required by the Fourth Amendment.[7] *See Daccarett*, 6 F.3d at 50. Cosme is thus entitled to a proper judicial determination of whether probable cause existed at the time of the seizure to support the forfeitability of his property— although not necessarily to the adversarial hearing that often precedes such a determination.

## III.   The Warrantless Seizure of Cosme's Bank Accounts

Cosme also argues that the government's seizure and continued possession of his bank accounts violates the Fourth Amendment. We agree.

18 U.S.C. § 981(b)(2)(B)(ii) allows the government to seize property without a warrant where an "exception to the Fourth Amendment warrant requirement would apply." We have held that the forfeiture statute does not "create a new exception to the fourth amendment's warrant requirement." *United States v. Lasanta*, 978

---

[7] The Government's application for the August 6, 2013 order stated, without justification or explanation, that Cosme's property was "already in the lawful custody of the Government." App'x 72.

F.2d 1300, 1304 (2d Cir. 1992), *abrogated on other grounds by Florida v. White*, 526 U.S. 559, 563 (1999). "To be valid, therefore, this warrantless seizure must meet one of the recognized exceptions to the fourth amendment's warrant requirement." *Id.* at 1305.

The government defends the warrantless seizure of Cosme's bank accounts by arguing that it was justified by the exigent circumstances exception to the warrant requirement under *Daccarett*. In *Daccarett*, we held that exigent circumstances existed where the government sought to freeze bank accounts used to move drug trafficking funds. 6 F.3d at 49. We stated that "[b]ecause the property at issue was fungible and capable of rapid motion due to modern technology, we are satisfied that exigent circumstances were present [in that case]." *Id.*

*Daccarett* permitted the initial freezing of electronic accounts because of their virtually instantaneous transfer capabilities—akin to the police securing or restricting access to premises while a warrant is obtained—but we do not read it to allow the perpetual restraint of a defendant's property without a warrant. Rather, the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant, as the government promised but then failed to do here. We are troubled that, in the absence of a warrant, the government has retained custody of

Cosme's bank accounts for over two years. *See Lasanta*, 978 F.2d at 1305 (noting that a warrant was necessary where it was not "impractical" for agents to obtain one); *cf. Mincey v. Arizona*, 437 U.S. 385, 393 (1978) ("[A] warrantless search must be strictly circumscribed by the exigencies which justify its initiation." (internal quotation marks omitted)).

Accordingly, the exigent circumstances exception does not immunize the lengthy, warrantless seizure here. Because the government has never set forth, either here or before the district court, any alternative theory by which another exception to the warrant requirement would apply, we conclude that the continued seizure of Cosme's accounts violated the Fourth Amendment. Nevertheless, it is settled law that "even when the initial seizure is found to be illegal, the seized property can still be forfeited." *Daccarett*, 6 F.3d at 46). Cosme is thus not entitled to the relief he requests—*i.e.*, the immediate return of his restrained assets. We express no view as to whether he may be entitled to other relief in the future, perhaps including suppression of certain evidence—an issue that is not germane to this appeal.

However, for the reasons described above in Section II, Cosme is entitled to a judicial determination of probable cause. If the district court determines that probable cause existed at the time of

20

seizure to support forfeitability, Cosme's request for the return of his property must be denied even though the continuing seizure was illegal, because "the illegal seizure of property . . . will not immunize that property from forfeiture."[8] *Premises & Real Prop. at 4492 S. Livonia Rd.*, 889 F.2d at 1265. If, on the other hand, the district court determines that no such probable cause existed, then and only then would Cosme be able to seek a vacatur of the restraining order and the return of his restrained assets.

## CONCLUSION

For the reasons stated above, we **VACATE** the April 21, 2014 district court order and **REMAND** for proceedings consistent with this opinion.

---

[8] Our ruling is not intended to foreclose the government from presenting evidence that there presently exists probable cause to believe the restrained assets are subject to forfeiture, even if that evidence was not in the government's possession at the time of the initial seizure. *See United States v. $37,780 In U.S. Currency*, 920 F.2d 159, 163 (2d Cir. 1990) ("[O]nce a forfeiture proceeding is brought, if further evidence is legally obtained to justify the government's belief, there is no persuasive reason to bar its use." (internal quotation marks omitted)).