POOLER, Circuit Judge,
dissenting:
In United States v. Thomas, 116 F.3d 606 (2d Cir.1997), we held that if there is “any possibility” that a request to discharge a juror stems from the juror’s view of the sufficiency of the government’s evidence, the court “must deny the request.” Id. at 622. The jury deliberating Jeff Spruill’s fate was split 11-1. The foreman told the judge that the lone holdout would *601 not change her vote. The judge interviewed the holdout, who said that she was trying her best to view the evidence impartially, but that her work with inmates in the prison system was “somewhat clouding” her views. She said that although she believed that she was coming to a fair decision, the other members of the jury disagreed. After further questioning, the juror suggested that it might be best if she were replaced. The judge did so, and the newly composed jury then promptly convicted Spruill.
Under Thomas, this was error. Because the record evidence disclosed the possibility that the holdout’s request to be discharged stemmed from her views of the sufficiency of the government’s evidence, the district court should have denied the request. The majority concludes that Thomas’s “any possibility” standard does not apply because the holdout expressed a potential bias, whereas in Thomas the concern was jury nullification. The majority then holds that, in any event, Spruill waived his Thomas argument when his attorney acquiesced to the juror’s dismissal. Thus, Spruill receives no review-not even plain error review-of the district court’s decision to dismiss the one juror who wished to acquit. Because I believe the majority opinion reads Thomas far too narrowly, and expands the waiver doctrine far too broadly, I respectfully dissent.
I. The Thomas Error
“[W]e subject a Rule 23(b) dismissal to ‘meticulous’ scrutiny in- any case where the removed juror was known to be the sole holdout for acquittal.” Thomas, 116 F.3d at 624-25; see also United States v. Hernandez, 862 F.2d 17, 23 (2d Cir.1988) (“[R]emoval of the sole holdout for acquittal is an issue at the heart of the trial process and must be meticulously scrutinized.”).
There can be no dispute that Juror 11 was known to be the lone holdout for acquittal. The first note from the jury indicated that there was “one juror [who] at this point ... does not agree with the jury.” App’x at 521. The note went on to state that this one juror had “doubts” and was “unwilling to change [her] vote.” App’x at 521. The second note, which the court received shortly after the first, stated that “one juror feels in their gut that they have a conflict of interest.” App’x at 521. After the district court instructed the jury that a true conflict of interest would need to be disclosed, Juror 11 herself wrote a note to the judge stating that her “gut feeling” was “potentially creating a bias.” App’x at 536. The district court concluded from these notes that it was “reasonable to infer that the jury has taken a vote on the merits and Juror 11 is alone in opposing the other jurors,” and that there were two possibilities: “either Juror 11 has a conscientious view that differs from everybody else or she’s having difficulty deliberating ... because of what might be thought of as sympathy for Mr. Spruill.” App’x at 538-39. It is clear from this record that the holdout juror referenced in the first note and Juror 11 were one and the same. Thus, we must “meticulously scrutinize” the decision to remove her.
The district court’s decision to remove Juror 11 cannot withstand such scrutiny. To determine whether to dismiss Juror 11 for cause, the district court was required to apply the evidentiary standard set forth in Thomas that “if the record evidence discloses any possibility that the request to discharge stems from the juror’s view of the sufficiency of the government’s evidence, the court must deny the request.” 116 F.3d at 621-22 (emphasis omitted) (quoting United States v. Brown, 823 F.2d 591, 596 (D.C.Cir.1987)).
*602 The record evidence discloses such a possibility. As noted above, the first note from the jury indicated that Juror 11 had “doubts” and was “unwilling to change [her] vote.” App’x at 521. Juror 11 told the district court repeatedly that she was “trying to do [her] best ... to make the best unbiased decisions,” App’x at 542, that she was “trying to be as fair as [she] c[ould] be,” App’x at 546, and that she was “trying to listen to all the evidence and ... com[e] to a fair decision,” id. She explained,
I’m trying to look at the evidence and trying to make a decision on all that, and I feel like in some ways I kind of am. But somebody mentioned — I can’t bring up the deliberations, but it just kind of made me think about it and it’s just been difficult. And they were asking me all this stuff and I was, look, I don’t know, you know. So I’m just trying to be honest about it. I’m trying to do my best----
App’x at 542-43; see also id. at 546 (“I feel like I was coming to a fair decision, but I feel like other members also felt maybe I didn’t, you know.... I mean, for [the] interest of the Court and everybody’s time, it might just make sense to have somebody else. I just don’t know.”).
This record reveals the possibility that Juror 11 initially voted to acquit based on her conscientious view of the evidence, but that, after she learned that she was in the uncomfortable position of being the lone holdout juror, she decided that, in the interest of “everybody’s time,” it “ma[d]e sense” to replace her. Because the record evidence discloses this possibility, the district court erred in granting Juror ll’s request to be discharged. Indeed, the Thomas court contemplated this precise scenario and concluded that the “any possibility” standard was necessary to protect holdouts such as Juror 11 who may feel pressure from their fellow jurors. See 116 F.3d at 622 (“The evidentiary standard we endorse today ... serves to protect these holdouts from fellow jurors who have come to the conclusion that the holdouts are acting lawlessly.”).
To avoid the obvious Thomas problem, the majority concludes that Juror ll’s removal “is not subject to Thomas’s ‘any possibility’ rule” because “the concern underlying Thomas, juror nullification, was not here at issue.” Majority Op., ante at 587. Nothing in Thomas, however, suggests that the “any possibility” standard applies only in the juror nullification context. To the contrary, the Thomas court stated that “courts must in all cases guard against the removal of a juror — who aims to follow the court’s instructions — based on his view on the merits of the case.” 116 F.3d at 622 n. 11 (emphasis added). “Accordingly, if the record raises any possibility that the juror’s views on the merits of the case, rather than a purposeful intent to disregard the court’s instructions, underlay the request that he be discharged, the juror must not be dismissed.” Id.
The majority nonetheless contends that “Thomas itself recognized that where concerns as to a deliberating juror’s continued ability to serve arise in a context other than nullification ... [,] its strict ‘any possibility’ rule is not required....” Majority Op., ante at 594. But the Thomas court recognized no such exception to the “any possibility” standard. It is true that the Thomas court discussed how a judge may, in some circumstances, be able to determine whether to dismiss a juror for cause without any inquiry into the juror’s thoughts. See 116 F.3d at 620 (discussing how “[e]vidence of the nature and extent of a juror’s unavailability or incapacitation ... is ordinarily available without inquiring into the substance of deliberations” (citations omitted)). But nothing in this *603 portion of Thomas, which concerns a judge’s inquiry into juror misconduct, suggests that Thomas’s holding concerning a judge’s dismissal of a juror should be constrained in the manner the majority suggests.
The reasons the Thomas court gave for limiting a district court’s ability to remove a holdout juror apply with equal if not greater force to this case. The Thomas court determined that the stringent “any possibility” standard was necessary because “a lower evidentiary standard could lead to the removal of jurors on the basis of their view of the sufficiency of the prosecution’s evidence,” id. at 622, and “to remove a juror because he is unpersuaded by the Government’s case is to deny the defendant his right to a unanimous verdict,” id. at 621.
In Thomas, the district judge received a note that a juror had a “predisposed disposition” to acquit. Id. at 611. The other jurors gave varying accounts for what they believed to be the basis for the juror’s predisposition. One juror, for example, “described Juror No. 5 as favoring acquittal because the defendants were his ‘people,’ ” and another “suggested that it was because Juror No. 5 thought the defendants were good people.” Id. On the other hand, “several jurors recounted Juror No. 5 couching his position in terms of the evidence.” Id. The Thomas court framed this as a “nullification” issue and vacated the conviction, despite the “painstaking care and caution” with which the district judge proceeded throughout the trial, because “the record'evidence raise[d] a possibility that the juror was simply unpersuaded by the Government’s case against the defendants.” Id. at 624.
Here, Juror 11 expressed a potential bias based on her experience working in the prison system, but she also stated that she was trying to be unbiased, trying to be fair, and felt that her decision was “in some ways” based on the evidence. App’x at 542-43, 546. As in Thomas, this evidence “raises a possibility that the juror was simply unpersuaded by the Government’s case against the defendants.” 116 F.3d at 624.
The Thomas court also found the “any possibility” standard necessary to protect the secrecy of jury deliberations. “Where ... a presiding judge receives reports that a deliberating juror is intent on defying the court’s instructions on the law, the judge may well have no means of’ investigating the allegation without unduly breaching the secrecy of deliberations.” Id. at 621. Thus, the “any possibility” standard “serves to protect against overly intrusive judicial inquiries into the substance of the jury’s deliberations.” Id. at 622.
This concern is equally present here, where the judge received a report that Juror 11 was potentially defying the court’s instructions on the law by allowing a bias to affect her decision. It is true that in some cases of claimed bias, the true source of the bias “is both easily identifiable and subject to investigation and findings without intrusion into the deliberative process.” Id. at 621. For example, in “instances of jurors who felt threatened by one of the parties, who are discovered to have a relationship with one of the parties, or whose life circumstances otherwise change during the course of deliberations in such a way that they are no longer considered capable of rendering an impartial verdict,” id. at 613-14 (citations omitted), the judge can “make appropriate findings and establish whether a juror is biased or otherwise unable to serve without delving into the reasons underlying the juror’s views on the merits of the case,” id. at 621. But where, as here, the claimed bias is in the form of sympathy toward the *604 defendant, it becomes too difficult for the trial judge to discern whether such sympathy stems from an inappropriate bias or a conscientious view of the evidence. In such cases, the “any possibility” standard is necessary “to protect against overly intrusive judicial inquiries into the substance of the jury’s deliberations.” Id. at 622.
The majority also contends that “[sjince Thomas was decided, this court has reiterated that its strict ‘any possibility’ rule does not reach beyond nullification to other forms of juror misconduct.” Majority Op., ante at 594 (citing United States v. Baker, 262 F.3d 124, 131-32 (2d Cir.2001)). Baker, however, says only that “the stringent rule announced in Thomas applies to removal of a juror by reason of the juror’s determination to vote without regard to the evidence.” 262 F.3d at 131. Baker does not limit Thomas to the juror nullification context; to the contrary, it recognizes that the Thomas rule applies where the juror is allegedly “determinfed] to vote without regard to the evidence.” Id.; see also id. (“Thomas ruled that a juror may not be removed for refusal to allow his or her decision to be governed by the evidence unless it is clear the motivation for the removal is not in fact the juror’s nonconforming view of the sufficiency of the evidence to convict.”). To be sure, the Baker court noted that the Thomas rule was “based on” the difficulty in detecting the difference between “a juror’s illegal act of nullification” and “the juror’s failure to be convinced of the defendant’s guilt,” id., but nothing in Baker suggests that the Thomas rule does not apply to circumstances outside the nullification context where, as here, it is equally difficult to detect whether the juror’s request to be discharged stems from an inappropriate bias or a conscientious view of the evidence.
Because I see nothing in Thomas itself or our case law that limits Thomas to cases of jury nullification, I would conclude that the “any possibility” standard applies here. Under that standard, the district court erred in removing Juror 11. Because this error is “plain” and “affect[s] substantial rights,” we have discretion to correct it if it “seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.” Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (alterations in original). As the Thomas court stated, “to remove a juror because he is unpersuaded by the Government’s case is to deny his right to a unanimous verdict.” 116 F.3d at 621. The right to a unanimous jury is a constitutional right guaranteed by the Sixth and Seventh Amendments. Andres v. United States, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). We have recognized that this right is “inextricably rooted in our jurisprudence, and remains ‘one of the indispensable features of [a] federal jury trial.’ ” United States v. Pa-chay, 711 F.2d 488, 494 (2d Cir.1983) (Mes-kill, J., concurring) (citation and emphasis omitted) (quoting Johnson v. Louisiana, 406 U.S. 356, 369, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)). Given the importance of the right at stake, we ought to exercise our discretion to correct the Thomas error, vacate Spruill’s conviction, and remand for a new trial.
II. Waiver
Ultimately, the majority’s entire discussion of Thomas is dictum because it is irrelevant to the majority’s holding, which is that Spruill waived his right to challenge the removal of Juror 11. According to the majority, Spruill is entitled to no review— not even plain error review — of the district judge’s decision to dismiss the one juror who wished to acquit. Before today, we have never applied the doctrine of waiver *605 so broadly. I am deeply troubled by the majority’s expansion of the waiver doctrine to bar review of Spruill’s claim of error in this case, especially given the constitutional dimension of the alleged error.
“Waiver is different from forfeiture.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, (1993). ‘Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.’” Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). We have further distinguished the difference between forfeiture and waiver as follows:
If a party’s failure to [object] is simply a matter of oversight, then such oversight qualifies as a correctable “forfeiture” for the purposes of plain error analysis. If, however, the party ■ consciously refrains from objecting as a tactical matter, then that action constitutes a true “waiver,” which will negate even plain error review.
United States v. Yu-Leung, 51 F.3d 1116, 1122 (2d Cir.1995); see also United States v. Cosme, 796 F.3d 226, 231-32 (2d Cir. 2015) (“[I]f a ‘party consciously refrains from objecting as a tactical matter, then that action constitutes a true waiver, which will negate even plain error review.’ ” (quoting Yu-Leung, 51 F.3d at 1122)); United States v. Quinones, 511 F.3d 289, 321 (2d Cir.2007) (“[I]f, ‘as a tactical matter,’ a party raises no objection to a purported error, such inaction ‘constitutes a true “waiver” which will negate even plain error review.’ ” (quoting Yu-Leung, 51 F.3d at 1122)). Thus, we have stated that “courts applying [the] waiver doctrine have focused on strategic, deliberate decisions that litigants consciously make.” United States v. Dantzler, 771 F.3d 137, 146 n. 5 (2d Cir.2014). And we have declined to hold an argument waived where there was “nothing in the record suggesting ... a strategic, calculated decision.” Id.
The majority concludes that Spruill waived his right to challenge the removal of Juror 11 because he “acted intentionally” when he “affirmatively agreed to and, at times, even recommended the actions he now challenges with respect to the removal of Juror 11.” Majority Op., ante at 598. First, to be clear, nothing in the record indicates that Spruill himself ever “affirmatively agreed to” or “recommended” the removal of Juror 11. This distinction is critical because in some cases, depending on the right at issue, a defendant “must personally participate in the waiver.” Olano, 507 U.S. at 733, 113 S.Ct. 1770.
Second, the majority discusses at length Spruill’s counsel’s actions during voir dire and during the inquiry of Juror 11, noting that at times counsel “specifically urged the district court to undertake the very inquiry of Juror 11 that he now challenges.” Majority Op., ante at 598. But Spruill’s counsel’s encouragement or approval of the district court’s inquiry of Juror 11 is irrelevant to the court’s dismissal of Juror 11. Spruill makes clear in his appellate brief that he “does not challenge the propriety of the questioning of Juror No. 11.” Appellant’s Reply Br. at 10. Thus, the only action of Spruill’s counsel that is relevant to the waiver issue is his statement that he agreed that the district court should remove Juror 11.
The question is whether this statement was an “intentional relinquishment or abandonment of a known right.” Olano, 507 U.S. at 733, 113 S.Ct. 1770. The answer to that question must be no because there is no conceivable reason why an attorney familiar with Thomas would intentionally relinquish or abandon the right to retain the one juror favoring acquittal. There is no conceivable tactical benefit to *606 doing so. Juror 11 was Spruill’s only hope.
The majority tries valiantly to come up with some tactical benefit, surmising that defense counsel “may have thought the juror more likely to succumb to the views of other jurors than to maintain an opposing view and, in those circumstances, thought it -better to substitute the first alternate and begin deliberations anew.” Majority Op., ante at 599. With respect, this argument cannot be made with a straight face. At best, an alternate juror would have voted to acquit, placing Spruill in essentially the same position he was in with Juror 11 on the panel. But Spruill’s counsel had to know that the far more likely outcome was that an alternate juror would, like 11 of the 12 original jurors, vote to convict. Counsel’s consent to the removal of Juror 11 could not have been a tactical decision.
The only explanation for counsel’s acquiescence is that he was either unfamiliar with Thomas or failed to appreciate the Thomas error. The record supports this explanation, as neither the district judge, nor the government, nor defense counsel ever mentioned Thomas in considering how to handle Juror ll’s request to be discharged. But if counsel’s acquiescence was simply due to such an oversight, it “qualifies as a correctable ‘forfeiture’ for the purposes of plain error analysis.” Yu-Leung, 51 F.3d at 1122; see also Dantzler, 771 F.3d at 146 n. 5 (finding that argument was forfeited, not waived, where there was “nothing in the record suggesting ... a strategic, calculated decision”' and “[t]he applicability of [the ease supporting defendant’s argument on appeal] was never mentioned in the District Court”); United States v. Villafuerte, 502 F.3d 204, 207 (2d Cir.2007) (“[I]ssues not raised in the trial court because of oversight ... are normally deemed forfeited on appeal.... ”).
The constitutional nature of the right at stake further cautions against a finding of waiver here. Thomas’s “any possibility” standard serves to prevent the removal of a juror because she is unpersuaded by the government’s evidence. 116 F.3d at 622. As noted above, to remove a juror for such a reason “is to deny [the defendant] his right to a unanimous verdict.” Id. 621. The right to a unanimous jury is a constitutional right, Andres, 333 U.S. at 748, 68 S.Ct. 880, that is “inextricably rooted in our jurisprudence, and remains ‘one of the indispensable features of [a] federal jury trial.’ ” Pachay, 711 F.2d at 494 (Meskill, J., concurring) (citation and emphasis omitted) (quoting Johnson, 406 U.S. at 369, 92 S.Ct. 1635). “There is a presumption against the waiver of constitutional rights.... ” Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). “[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and ... do not presume acquiescence in the loss of fundamental rights.” Carnley v. Cochran, 369 U.S. 506, 514, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) (quoting Johnson, 304 U.S. at 464-65, 58 S.Ct. 1019). “Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).
In Pachay, we held, that a defendant cannot waive his right to a unanimous jury where the district court proposes accepting a non-unanimous verdict. 711 F.2d at 490. In so doing, we recognized the problem inherent in allowing the district court to seek a criminal defendant’s consent to a non-unanimous jury. Id. Allowing such a possibility “would be unfair to the criminal defendant, who might feel coerced into agreeing to a suggestion of a non-unani *607 mous verdict by the risk of ... the trial judge ... imposing] a harsher sentence on a non-consenting defendant....” Id. at 490-91. Similarly, in United States v. Chavis, 719 F.2d 46 (2d Cir.1983), we held that even where defense counsel introduces the idea of accepting a non-unanimous verdict, we may conclude that the right to a unanimous jury was waived only where “the trial judge ha[s] made a searching inquiry to [e]nsure that the defendant was fully aware of his right to a unanimous verdict and that he had given up that right of his own free will and not as a result of a misunderstanding, or a promise, threat or someone’s suggestion.” Id. at 48.
I read these cases to suggest that if there is any uncertainty as to whether Spruill truly intended to waive his challenge to the removal of Juror 11, we should err on the side of finding no waiver in view of the fundamental and constitutional nature of the right at stake. Here, the district court conducted no inquiry of Spruill to ensure that he wished to consent to the dismissal of the lone holdout juror. There is no evidence that defense counsel considered that Spruill might have a viable argument that the holdout juror must be retained under Thomas. And, as noted above, Spruill gained no conceivable tactical benefit by agreeing to dismiss Juror 11. In these circumstances, I conclude that Spruill’s counsel’s consent to the dismissal of Juror 11 is more akin to an “oversight” than it is to an “intentional relinquishment or abandonment of a known right.” Accordingly, I would review the removal of Juror 11 for plain error.
CONCLUSION
The majority holds that the waiver doctrine bars review where counsel “acts intentionally” in conceding an argument, even if there is no tactical reason for doing so. While I believe that this expansion of the waiver doctrine is misguided as a matter of law, more fundamentally, it is unclear to me what values such an expansion serves to promote. In cases involving a tactical benefit, the waiver doctrine prevents the unfairness that would result if a party who conceded an issue at trial for tactical reasons was then allowed to raise that issue on appeal. But I see no value in denying Spruill review in this case. We simply punish Spruill for the oversight of his attorney.
I would review Spruill’s challenge to the removal of Juror 11 for plain error. Under that standard, I would hold that the district court plainly erred in removing Juror 11 because the record evidence disclosed a possibility that Juror ll’s request to be discharged stemmed from her status as a holdout. Accordingly, I would vacate Spruill’s conviction and remand for a new trial. Because the majority opinion holds otherwise, I respectfully dissent.